DOROTHY L. KELLOGG, an Infant, by MARY WANAMAKER, Her Guardian ad Litem, Plaintiff, *v.* STANLEY V. KELLOGG, Defendant.

Supreme Court, Onondaga County, March, 1924.

Husband and wife — annulment of marriage on ground of non-age of wife — granting license under Domestic Relations Law, §§ 14 and 15, is ministerial — person performing marriage ceremony not required by Domestic Relations Law, § 17, to investigate qualifications of parties — false affidavit by plaintiff as to her age made on application for license not bar to annulment but may be considered by court in exercising its discretion under Domestic Relations Law, § 7, subd. 1, as amended by Laws of 1922, chap. 313 — marriage annulled — defendant by virtue of Domestic Relations Law, § 114, not liable for support of child who has been legally adopted by plaintiff's parents — alimony denied without prejudice.

The duty of a town or city clerk in granting a marriage license under sections 14 and 15 of the Domestic Relations Law is purely ministerial and if the applicants by affidavit swear that they are of legal age the clerk has no discretion in issuing the license.

A person performing a marriage ceremony is not required by section 17 of the Domestic Relations Law to investigate the qualifications of the parties further than to ascertain that the proper license has been issued to them.

In an action to annul a marriage between a girl fifteen years of age and a man twenty-one years of age brought on behalf of the girl by her guardian *ad litem*, in which it appears that the girl falsely swore that she was eighteen years of age, the false affidavit on her part, though constituting perjury, is not a bar to the annulment of the marriage although it is a fact to be taken into consideration by the court in exercising its discretion to annul the marriage contract pursuant to subdivision 1 of section 7 of the Domestic Relations Law, as amended by chapter 313 of the Laws of 1922.

In this case, however, since it appears that whatever wrong was committed was the wrong of the husband, the court does not consider the act of the girl in falsely swearing to her age as sufficient ground for denying the annulment of the marriage and, therefore, the marriage is annulled.

The adoption of the child of the marriage by the parents of the wife relieves the husband of the responsibility of supporting his child since section 114 of the Domestic Relations Law distinctly provides that after adoption the parents of the person adopted are relieved from all parental duties toward and of responsibility for the person so adopted.

There seems to be some doubt as to the power of the court to grant alimony to the wife in annulment proceedings and since the defendant is a non-resident and has no property in this state alimony is not granted but this decision is made without prejudice to any action which the wife may hereafter take to recover alimony from the husband.

ACTION for annulment of marriage.

*Mangin & Hogan*, for plaintiff.

No appearance for defendant.

SMITH, J.  The plaintiff seeks to have her marriage with the defendant annulled on the ground that at the time thereof she was under eighteen years of age.

The facts and circumstances surrounding this marriage are such that although without a doubt a decree of annulment should be granted, an examination of the law affecting the making and dissolution of marriage contracts and of the state of society which makes possible such conditions as existed in this case may not be without value.

The plaintiff was born on the 5th day of May, 1906, and was, therefore, about fifteen years and seven months old at the time of the marriage; the defendant was twenty-one years old.  The plaintiff had been a student at the vocational high school in Syracuse, N. Y., but shortly before the marriage had ceased going to school and was at the time living with her mother; the defendant was a junior in Syracuse University; the parties first met on Sunday, the 12th of December, 1921; they were married on the fifteenth day of December following by a justice of the peace in the city of Syracuse and lived together from Thursday until Saturday at the Onondaga Hotel as man and wife, when the defendant practically abandoned plaintiff.

The marriage license was obtained from the city clerk of the city of Syracuse; the plaintiff was a Catholic and the defendant was a Protestant; they sought a Catholic clergyman, who refused to perform the marriage ceremony, whereupon they went to a justice of the peace in the city of Syracuse who performed it for them. The mother of the plaintiff learning in some way of the issuance of the marriage license, made an effort to prevent the marriage but was unable to find her daughter in time.

The parties lived at the Onondaga Hotel as man and wife for about three days, when the defendant left the plaintiff at the hotel, saying he was going home to tell his parents of the marriage; the defendant did not return but his uncle and a lawyer came from his home in Castile, N. Y., and the plaintiff went with them to the residence of the uncle, but not to the home of defendant's parents; the plaintiff stayed with the uncle and the defendant with his parents; there was no cohabitation between the parties after defendant left the plaintiff in Syracuse.  After a little while the uncle brought the plaintiff back to Syracuse to her mother's, since which time the plaintiff has not seen her husband.  The defendant left the state of New York, and at the time the action was brought was living in Oregon.  Some little correspondence was kept up between the parties until the spring of 1922.  On September 8, 1922, a child of the marriage was born; the plaintiff's mother has

formally adopted the child and she and her husband are taking care of it. The defendant has contributed practically nothing to the support of the plaintiff or the child, but his parents have made some contribution from time to time; they seem to have acted with due appreciation of the seriousness of the situation and of the wrong their son has done. It is apparent that the defendant has abandoned the plaintiff. On the 29th day of June, 1922, the defendant wrote the plaintiff that he never loved her but only felt sorry for her.

The facts in this case constitute a tragedy in the life of this plaintiff, and yet this case is but one of many which this court is called upon to consider with increasing frequency; in fact actions for annulment of marriage on the ground of non-age of parties account for a large proportion of the matrimonial problems presented to the court. The prayer in these actions is now addressed to the discretion of the court; this imposes upon the court a grave responsibility; the occasions for the exercise of such discretion could in my opinion by proper legislation and the co-operation of those authorized to perform the marriage ceremony, be largely reduced. So frequent are these appeals to the court that it may not be amiss to examine some of the conditions which afford the opportunity for hasty or premature marriages, and to examine the law with respect to its requirements precedent to a marriage.

It is useless to give lip service to the importance of the marriage contract and of the marriage state in its relation to the very structure and maintenance of society, to dwell upon the sanctity of the home, the sacredness of the marriage contract, when our laws, our faulty execution of them and the conduct of individuals with relation to the marital relation constitute a belial of that very importance and sacredness. The home constitutes the very basis of our social structure, and no one can witness the impairment of the sanctity of the marriage relationship without anxiety as to the solidity of the social structure.

Let us, therefore, examine into the present state of the law with respect to marriage, particularly as to the age of consent and the safeguards set up to protect society.

The marriage contract differs from all others; it is *sui generis;* it formerly was considered a religious contract and the ceremony sacramental in character, and as such the relationship was in England largely under the jurisdiction of the Ecclesiastical Courts. Our statutes, however, provide that marriage is a civil as distinguished from a religious contract and yet recognizes the right of duly authorized clergymen to perform the marriage ceremony. The churches, while generally recognizing that marriage is a civil

contract, and that the clergy derives its power to perform the marriage ceremony from the law, still in large measure look upon the marriage ceremony as a religious sacrament, and treat the bonds of matrimony as holy bonds. In a great majority of cases parties are married with religious ceremony.

The Catholic church especially casts about the marriage ceremony a protection, far greater than and in addition to that provided by law, which goes far to protect its members from the consequences of illegal, ill-considered and hasty marriages. My understanding is that even where a proposed marriage is proper, so far as all appearances are concerned, the Catholic church requires what is called the publishing of the bans or public announcement on three successive Sundays in the open church of the proposed marriage, during which time an investigation may be, and I understand is made, as to whether any reason exists why the marriage should not be solemnized. This case offers an illustration. The Catholic clergyman when appealed to refused to marry these parties. They were in a hurry, so they go to a justice of the peace.

In many cases presented to the court it appears that ministers of the gospel, acting under and relying upon the authority of the marriage license, marry parties who are unknown to them at the time of the marriage. It is true that some ministers in some denominations absolutely refuse to solemnize a marriage contract unless they know at least one of the contracting parties, and in some instances a minister will refuse to solemnize the marriage contract unless at least one of the parties is of his parish; but such cannot be said to be the general rule. There is here a great opportunity by voluntary act to put a check upon hasty and ill-advised marriages by the voluntary action of churches and ministers themselves. If the church still adheres to the proposition that the marriage ceremony is a religious sacrament, it cannot be too much to suggest that it cast about it every reasonable safeguard within its power. In this instance the church afforded protection by refusing to solemnize the marriage, although a license had been issued by the law authorities, and is, therefore, absolved from all responsibility for what here happened. So much for the religious character of the marriage contract which happily remains with us as an inheritance from the Ecclesiastical Law of England.

Let us now examine the law of the state applicable to the entry into the marriage contract.

Section 14 of the Domestic Relations Law provides that " The town or city clerk of each and every town or city in this

47

state is hereby empowered to issue marriage licenses to any parties applying for the same *who may be entitled under the laws of this state to contract matrimony,* authorizing the marriage of such parties," and prescribes the form of the license and of the marriage certificate to be returned to the clerk's office by the person solemnizing the marriage.

Section 15 thereof prescribes the conditions under which a marriage license may be issued, and reads in part as follows: " It shall be the duty of the town or city clerk when an application for a marriage license is made to him to require each of the contracting parties to sign and verify a statement or affidavit before such clerk or one of his deputies, containing the following information. From the groom: Full name of husband, color, place of residence, *age,* occupation, place of birth, name of father, country of birth, maiden name of mother, country of birth, number of marriage. From the bride: Full name of bride, place of residence, color, *age,* occupation, place of birth, name of father, country of birth, maiden name of mother, country of birth, number of marriage." Other information is required not essential to be noted in this instance.

This section further provides that if it appears from the affidavits and statements so taken that the persons for whose marriage the license in question is sought, are legally competent to marry, the said clerk *shall* issue such license, except in the following cases: " *If it shall appear upon an application of the applicants as provided in this section,* that the man is under twenty-one years of age, or that the woman is under the age of eighteen years, then the town or city clerk before he shall issue a license shall require the written consent to the marriage from both parents of the minor or minors or such as shall then be living, or if the parents of both are dead, then the written consent of the guardian or guardians of such minor or minors."

It is apparent from the reading of these sections that if the parties make affidavit that they are of the statutory age, it is not made the duty of the clerk to inquire as to the facts, but it is his duty to issue the license. His act is purely ministerial.

Section 16 of the act makes willful false swearing upon an application for a marriage license in regard to any material fact as to the competency of any person to marry, perjury.

Section 17 provides: " If any clergyman or other person authorized by the laws of this state to perform marriage ceremonies shall solemnize or presume to solemnize any marriage between any parties without a license being presented to him or them as herein provided or *with knowledge that either party is legally incompetent*

*to contract matrimony* as is provided for in this article he shall be guilty of a misdemeanor."

Here the function of the magistrate or clergyman solemnizing the marriage is more than ministerial, provided he personally has knowledge that either party is legally incompetent to enter into the marriage contract. This section does not impose any duty to make investigation, and the magistrate or clergyman is fully protected by the marriage license as clearly appears by section 18 of said act, provided he does not have personal knowledge of the incompetency of either party.

For all practical purposes the only legal punishment for a marriage of parties under age is that which may be imposed upon the person making the false statement or affidavit for the purpose of procuring the license, and in this case the plaintiff. Here a mere child fifteen years of age, scarcely old enough fully to appreciate the solemnity of an oath, undoubtedly with little thought, signed the application as a formality, while the clerk makes it out as a matter of routine. It seems anomalous that the law should be such that in a case such as this the sole penalty which may be imposed is that fixed for perjury, and that upon the very one who by law is made incapable by reason of youth to give consent to the marriage.

It is not for the court to outline remedial legislation; it must take the law as it finds it; but the court has a wide experience bearing upon the effect of statutes, and the occasion exists for further legislation to protect our boys and girls who are under the age of consent, their parents and society itself from the consequences of hasty, ill-advised, runaway or trial marriages. Clergymen can help greatly, if they would voluntarily assume responsibility, and not rely on the marriage license alone; some one in authority should have something more than a ministerial duty to perform before a marriage license is issued, and added safeguarding restrictions upon the issuance of a marriage license should be set up.

We now come to the consideration of the questions here involved. Shall the plaintiff, by reason of the fact that she signed the application in which it must appear that she was over eighteen years of age, be deprived by reason of that fact of relief from the situation in which she now finds herself? In other words, does the doctrine that he who comes into equity must come with clean hands apply? I am of the opinion that this fact alone should not nor did the legislature intend that it should stand as a bar, and that even if it could be shown that the plaintiff committed perjury in signing the marriage license, this fact would have no determining influence upon the exercise of the discretion of the court, but

would be a circumstance to be taken into consideration by the court in the exercise of its judicial discretion. That such is the intent of the statute clearly appears.

Subdivision 1 of section 7 of the Domestic Relations Law, until the year 1922, provided as follows: " A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: 1. Is under the age of legal consent, which is eighteen years." Under this provision it seems that where either party was at the time of the marriage under the age of consent, the court had no discretion in the premises, excepting possibly where the marriage contract was entered into with the consent of parents of the child of non-age.

Such was the law prior to 1922 when by chapter 313 of the Laws of that year subdivision 1 of this section was amended so as to read as follows: " 1. Is under the age of legal consent, which is eighteen years, *provided that such nonage shall not of itself constitute an absolute right to the annulment of such marriage, but such annulment shall be in the discretion of the court which shall take into consideration all the facts and circumstances surrounding such marriage.*"

It is here unnecessary to comment upon the inconsistency of this subdivision with section 15 which provides that the age of consent of the man is twenty-one years and that of the woman eighteen years. This inconsistency is not important here because the age of consent of the woman is, according to said section, eighteen years. The amendment of 1922 places the whole matter of annulment of marriages in cases of non-age within the sound discretion of the court. Annulment actions on the ground of non-age occur with such frequency as to lead to the conclusion that in many cases a premature marriage was entered into with the knowledge of the older party that if the marriage should not prove satisfactory, a condition could be forced whereby the marriage could be annulled. In short the state of the law is such as to give encouragement to so-called trial marriages. The amendment of 1922 leaving the question of annulment to the sound discretion of the court may serve as a check upon such marriages.

The penal provision of the statute prior to the amendment of 1922 was not fatal to the application for a decree of annulment, nor is it now, but is merely a circumstance to be taken into consideration by the court in the exercise of its discretion as to whether annulment should be granted.

Should the court in this case exercise its discretion? It is apparent from the evidence in the case, the conduct of the defendant, the extreme youth of the plaintiff, and this defendant's worthless character evidenced by his conduct, that there was no

such real unity of lives and of spirit as to constitute a real state of matrimony. Whatever may have been the motives that prompted the plaintiff to consent to the marriage, they were awakened by the defendant, who was some six years older than the plaintiff, and who was apparently upon an escapade; after three days of association he was ready to cast plaintiff aside. His conduct from the beginning down to the present time has been most reprehensible, and there is no reason why the life of the plaintiff now still under eighteen years of age, should be ruined by continuing the bonds of the contract with the defendant. Life is still before her, her child has been adopted by her parents and for the present at least is cared for; after the experience which she has had, she may perhaps still look forward with a little hope and will probably in the future act with greater discretion than she has heretofore shown. I have no hesitation in this case in exercising the power within my discretion which is conferred upon the court by the statute. The marriage contract between the parties should be annulled.

The questions which remain are with respect to the future responsibility of the defendant to the plaintiff and her child. The plaintiff asks for a decree annulling the marriage and " that the plaintiff have such other and further relief as may be just together with the costs and disbursements of this action." The complaint nowhere specifically asks for an allowance from the defendant for the maintenance of the plaintiff or her child.

I think, however, the prayer for relief coupled with the allegations of facts and the legal obligation of the husband to support his wife and child, make the complaint adequate to warrant the examination of questions involved.

Section 1140 of the Civil Practice Act provides: " If a marriage be * * * annulled, the court, by the judgment or by subsequent order, may award the custody of a child of the marriage to either party as the interests of the child require, and may make provision for his education and maintenance out of the property of either or both of its parents if the marriage shall have been declared a nullity, and out of the property of the guilty parent, if the marriage shall have been annulled." In this case the child of the marriage is the legitimate child of both parties. Civ. Prac. Act, § 1135. It is, therefore, clear that this is a case where it would be proper in the decree or subsequent order at the foot thereof to impose the burden for the care and maintenance of the child of this marriage upon the defendant, were it not for the fact that the child has by and with the consent of both parents, been adopted by the mother of the plaintiff. No question is here raised as to the legality of the adoption, nor is that question here passed

upon, and without prejudicing the right of any party or of the infant to attack the order of adoption, it must, for the purposes of this action, be assumed to be legal.

Section 114 of the Domestic Relations Law provides that after adoption " the parents of the person adopted are relieved from all parental duties toward, and all responsibility for, and have no rights over such child, or to his property by descent. or succession."

For the purposes of this action, so long as the order of adoption stands, it would seem, therefore, that upon the facts as they now appear there is no obligation on the part of the defendant to support the child. *Matter of MacRae*, 189 N. Y. 142, 147.

The only question which remains is the question of alimony. In actions for annulment the statute makes no provision whatsoever for alimony either permanent or temporary. This fact, however, would not deprive a court of equity of such original jurisdiction as it had with respect to matrimonial actions over a subject-matter as to which the legislature has failed to make provision. The right to alimony is a right which grows out of the marriage relationship and presupposes a legal and binding contract of marriage. If in this case the marriage were void *ab initio*, the very premise upon which the right to grant alimony, either permanent or temporary, rests, would not exist. The extent to which the court has gone in actions of annulment is to allow counsel fees and temporary. alimony where the husband has brought an action to have the marriage annulled and the wife contests the nullity of the marriage. *Jones* v. *Brinsmade*, 183 N. Y. 258. This case was one where one of the parties was insane; of course if insanity existed at the time of the marriage, it would be void from the beginning.

There is one possible basis upon which it could be urged that alimony could be allowed, and that grows out of the statutory provision which places the granting of a decree of annulment on the ground of non-age within the discretion of the court and makes the marriage void only from the time of the decree. There appears to be no present necessity so far as the plaintiff is concerned for any provision in her behalf. She does not make specific request for it in her complaint, but does in the requests presented.

The circumstances of the case are such that the defendant should not be relieved from the responsibilities of a situation which his conduct has created, and the statute if need be should be amended so as to give the court power in such a case as this in the exercise of sound discretion, to make proper award against the offending party. In an action for divorce the marriage contract is " dissolved;" in the action for annulment on the ground of non-age, it is " annulled;" in both cases the marriage contract terminates

as of the date of the decree; there is only a distinction in names, both actions operate upon the same *status* or *res;* why alimony should be allowable in one and not in the other case is difficult to comprehend.    This marriage was not void but voidable and becomes void " from the time its nullity is declared by a court of competent jurisdiction."

Whether under its general equity powers in cases in the absence of express statutory provision, where a contract of marriage is not void *ab initio,* but only from the time of the judicial declaration, and where the avoiding of the marriage in cases of non-age is a matter of judicial discretion, is the court without power to do in the way of alimony what justice requires?    *Quœre.*

This question is not here passed upon for the reason that it does not appear to be squarely or necessarily before the court at this time.

The summons herein was served upon the defendant by publication; the order of publication recites that the defendant is a resident of the state of Oregon.    The court has acquired no jurisdiction to render a judgment *in personam* in this action; it does not appear that the plaintiff has any property within this state which would be subject to attachment. . *Rigney* v. *Rigney,* 127 N. Y. 408.

The decision is made without prejudice to any action which the plaintiff may hereafter take to recover from the defendant alimony, damages or for the maintenance of the child at the foot of the decree to be entered herein, or otherwise, on account of the marital relationship which existed between them.

Judgment accordingly