In the Matter of the Application of ANTON ALZMAN, Petitioner, for an Order of Mandamus against THOMAS F. MAHER, Individually and as Deputy City Clerk of the City of New York, Respondent.

Supreme Court, Kings County, April 30, 1930.

*Louis L. Cantwell*, for the petitioner.

*Arthur J. W. Hilly* [*Jos. P. Reilly, Herbert S. Worthley*, and *Helen C. Corbett* of counsel], for the respondent.

DUNNE, J. The deputy city clerk of the city of New York, in charge of the marriage license bureau in Brooklyn, has refused to issue petitioner a license to marry. The basis for the refusal, it appears, is that the respondent does not recognize a certain decree of divorce issued in favor of the petitioner by the State of Sonora, Mexico, as binding and entitled to recognition in the State of New York, and that, therefore, he finds the petitioner not competent to enter into the proposed second marriage. The respondent seeks to justify his action in that, since section 15 of the Domestic Relations Law (as amd. by Laws of 1929, chap. 633) imposes upon the city clerk a penalty of $100 for every instance in which he issues a license to a party who is not " legally competent to marry," this presupposes the right to use reasonable care to avoid incurring the penalty.

The section cited sets forth certain prerequisites which are conditions precedent to the issuance of a license. Among these provisions appears the following: " The said clerk shall also embody in the statement if either or both of the applicants have been previously married, a statement as to whether the former husband or husbands or the former wife or wives of the respective applicants are living or dead and as to whether either or both of said applicants are divorced persons, if so, when and where and against whom the divorce or divorces were granted and shall also embody therein a statement that no *legal impediment* (italics mine) exists as to the right of each of the applicants to enter into the marriage state."

I am of opinion that the " legal impediment " here referred to includes merely such proposed marriages which are proscribed by statute and which can be determined *ipso facto* by the answers made to the clerk. Within such category, for example, would be a proposed incestuous marriage, and the answers made to the clerk indicated definitely that under section 5 of the Domestic Relations Law the parties to the application for license to marry were within the prohibited degree of consanguinity. The answers made would of themselves be determinative that there existed a " legal impediment " to the marriage, and the clerk would be required to refuse the license. His failure to so refuse in such case would subject him to the statutory penalty. I do not think, however, that the section quoted confers upon the clerk the right to inquire into the efficacy of the decree of a sister State or even of a foreign tribunal for the purposes of determining whether there exists a " legal impediment."

Such inquiry would necessitate a determination as to the ultimate validity of said decree — a judicial proposition which is, therefore, peculiarly and solely within the province of the courts. To hold that the respondent has the authority in the instant case to refuse a license because he doubts the tenability of the Mexican decree is to hold basically that he may question any other decree of any other court on the ground that such decree has not rendered a party to such proceeding " legally competent " to again assume the marital relation with another.

It cannot be said that the Legislature in the enactment of the section intended to confer upon the clerk an authority of this wise, the exercise of which might involve intricate questions of law or of fact or of both. The court holds that such was not the intent of the Legislature; to reach the contrary conclusion would be but to hold the section in that respect unconstitutional as attempting to confer upon a person who was not a judicial or quasi judicial officer an authority which is a prerogative of the courts.

The respondent contends and alleges in his return that the conduct of the parties constitutes a fraud upon the people of the State of New York and upon its laws, because neither of the parties left the State of New York to obtain such decree. Whatever may be the final construction put upon a decree which for practical purposes smacks of a " divorce by proxy," that question is not before the court at present. It is to be distinctly noted that upon this application the court is concerned, not with the efficacy of the decree, but confronted merely with the proposition of the extent and limitations of the city clerk's authority in refusing to issue a license. The statute requires the clerk to ask certain questions and to satisfy himself of the identity of the persons appearing before him. If *upon the face* of the answers given it does not appear that there are statutory reasons why the marriage is not to be allowed, the license must issue. The statute does not confer an authority to inquire as to the effect to be given the decree of a court. The duties are not judicial; or, in respect to the proposition involved herein, even discretionary; they are ministerial. The question of the validity of the decree can be passed upon only in an action instituted by an individual party in interest or by the proper public authorities representing the people in their sovereign capacity, when and if the same requires adjudication.

In finality, the proposition is one which remains solely within the *jurisdiction* of the courts. (See *Kellogg* v. *Kellogg*, 122 Misc. 734; Opinions of Attorney-General, 1913, p. 480.)

Motion granted.