Bergan, J.
The facts are stipulated. The testatrix, Edith Baldwin Moore, and her husband, Carl Moore, adopted as their son, Raymond Victor Moore, whose present whereabouts are not known. He has four minor children. The Commissioner of Public Welfare of Chemung County “ has contributed ”, at a time not shown by the stipulation, the sum of $947.50 for the support of these children.
Edith Baldwin Moore died May 1, 1947. The Commissioner of Welfare filed a claim against her estate for the $947.50 paid for the support of the children óf her adopted son. The claim, sworn to March 12, 1948, merely alleges that the assistance was granted “ within.the past six years ”. The executors rejected it. Upon these facts which are the only ones shown by the record, the Surrogate has allowed the claim and ordered that it be paid.
There are some other facts stated in the briefs which are not stipulated or otherwise in the record. It is stated, for instance, that no welfare assistance was given the children “ after April 15,1946 ”, and decedent “ could not possibly have received any money from her husband’s estate until September 4,1946, when Letters Testamentary were issued.”
There was nothing before the court to show just when the aid was given these children by the commissioner; whether the testatrix’ husband was living or dead then or now; and the financial status of the testatrix or her husband at the time relief was given.
*473 The pertinent statute is section 101 of the Social Welfare Law which provides (subd. 1) in part, that the “grandparent * * * of a recipient of public assistance * * * shall, if of sufficient ability, be responsible for the support of such person ’ ’. The statute directs that this obligation shall constitute “ an implied contract ”. (§ 104.)
The testatrix occupied in respect of the children of her adopted son exactly the same legal relationship that she would have had to the children of a son borne by her. The statute (Domestic Relations Law, § 115) is quite explicit on this point. Foster parents and children, it provides, shall sustain the “ legal relation ” of parent and child and shall have all the rights and duties “ of that relation”.
This does not merely impose the duties of a parent to a particular child, but the duties of the relationship, which is quite a different thing, and it thus extends to the resulting rights or obligations which grow from that relationship. See Betz v. Horr (276 N. Y. 83), and Kellogg v. Kellogg (122 Misc. 734). The legal effect has been to make the adopted child the natural child of the adoptive parent. (Carpenter v. Buffalo Gen. Elec. Co., 213 N. Y. 101, 108.)
A good argument can be made for the contention that financial ability to support, acquired at any time after the assistance is given and within a period of ten years, would meet the requirements of the statute, i. e., that the “ ability ” to support depends upon any subsequent meeting of the obligation imposed by implied contract.
The relative shall “ be responsible ” if “ of sufficient ability ” (§ 101). Responsibility is related to financial ability, rather than the ability related to the actual time of giving of relief. Added to this is the language governing the institution of an action by the welfare officer (§ 104), which provides the action is maintainable against a person “ discovered to have property ” or against the estate of one who dies leaving property. This language seems to suggest relief against one who subsequently becomes possessed of property, which, indeed, would exist generally in the case of a person bound by an “ implied contract ”.
Still, the judicial interpretation of the statute is in the other direction. The leading case is Hodson v. Stapleton (248 App. Div. 524) in which it was squarely decided in the First Department that responsibility exists only for a period in which there was actual financial ability. This case was cited with approval by the Fourth Department in Fuller v. Galeota (271 App. Div. *474 155) but the principle was not applied for other reasons. It was followed in Matter of Clairborn (51 N. Y. S. 2d 543).
The judicial policy thus enunciated seems to rest, in turn, on public policy rather than on the sifting of legislative language. It is a sufficiently consistent judicial evaluation to require that the rule be followed here. One reason implicit in the acceptance of the rule is that an action by a welfare officer as a creditor to recover on a welfare obligation against a person striving to earn Ms own living would defeat in some cases the benefits of public assistance in the sense it would retard self-rehabilitation.
The Surrogate went beyond the stipulation to examine the records of his office in this estate to reach the conclusion that the decedent left a gross estate of $62,554.85. There is nothing to show when she acquired this, and nothing to show definitely when the assistance was furnished. The dates cited in appellants’ brief of assistance rendered from July 8,1943, to April 15, 1946, have no support in the record, nor has the further statement that the testatrix “ could not have been ” of sufficient means before September 4, 1946, when letters testamentary on the estate of her husband were issued. The commissioner argues that the question of financial ability of the testatrix at the time assistance was given was not raised before the Surrogate, and the only question was whether the relationship of decedent to these cMldren was of the Mnd which would have incurred liability.
But the appellants’ rejection of the claim was very much broader than this and the stipulation between the parties does not limit the issue to the question of the legal effect of relationsMp to an adopted cMld. Moreover, the Surrogate dealt with tMs question in his opinion by holding that it was immaterial whether testatrix had financial ability when the relief was rendered.
Since there was nothing in the record before the Surrogate to show the testatrix had financial ability at the time the assistance was rendered, the order should be reversed and the proceeding remitted to the Surrogate for such further proof as the parties may be advised, with costs to abide the event.
Foster, P. J., IIefferxax and Coox, JJ., concur; Brewster, J., concurs in the result.
Order reversed, on the law and facts, and the proceeding remitted to the Surrogate for such further proof as the parties may be advised, with costs to abide the event,