**STRUNK v. UNITED STATES.**

No. 360.

United States District Court

E. D. Kentucky.

Oct. 14, 1948.

Caylor & Caylor and Leonard S. Stephens, all of Whitley City, Ky., for plaintiff.

Claude P. Stephens, U. S. Atty. and Kit C. Elswick, Asst. U. S. Atty., both of Lexington, Ky., for defendant.

William A. Hamm, of London, Ky., Guardian ad litem for infant defendants Thomas and Caroline Sue Strunk and attorney for defendants Nadine, Frieda and Juanita Strunk.

FORD, District Judge.

Howard Max Strunk was born on July 26, 1919. He entered the military service of the United States on October 29, 1940, and was killed in line of active duty on September 17, 1944. He left neither widow nor child; he was never married. His mother died a few days after his birth. The plaintiff, Charles Earl Strunk, father of the deceased soldier, after a "disagreement" between him and the Veterans Administration requisite to jurisdiction, 38 U. S.C.A. § 817, filed this action seeking to recover $10,000, the aggregate amount of two National Service Life Insurance policies upon the life of his deceased son. The first insurance, in the principal sum of $5,000, was applied for and granted on January 5, 1942. The insured designated his grandfather, Abraham Strunk, as principal beneficiary of this insurance. No contingent beneficiary was named. The other insurance in the principal sum of $5,000 was applied for and granted on April 24, 1943. The insured also designated his grandfather, Abraham Strunk, as principal beneficiary of this insurance and named his aunt, Mrs. Grace Ramsey, as contingent beneficiary. Both policies were in full force and effect at the time of the death of the insured.

Abraham Strunk, grandfather of the deceased soldier, who was designated as the principal beneficiary under both policies, died in 1944, approximately eight months prior to the death of the insured.

The United States filed an answer in the nature of a bill of interpleader (38 U.S.C. A. § 445) acknowledging its indebtedness under both policies to the beneficiaries lawfully entitled thereto, and alleging that the aunt of the deceased soldier, Mrs. Grace Ramsey, and his half-brothers and half-sisters, Juanita Strunk Basham, Frieda Strunk and Nadine Strunk Bellissamo, children of the plaintiff by his second wife, and Thomas Strunk and Caroline Sue Strunk, children of the plaintiff by his present wife, are persons having or claiming to have an interest in the insurance and praying that each of them be made parties to this proceeding and be required to interplead their respective claims herein and that the Court adjudge and direct payment of the insurance benefits under the policies to the person or persons lawfully entitled thereto.

By appropriate pleadings, those of the above named parties who are adults have set up their claims herein. Thomas and Caroline Sue Strunk, being infants without a general guardian, committee, conservator or other like fiduciary, are represented by their guardian ad litem appointed by the Court, and their claims to the insurance are asserted by him on their behalf. Federal Rules Civil Procedure, rule 17(c), 28 U.S.C.A.

The claimant Mrs. Grace Ramsey, aunt of the insured, who was designated as contingent beneficiary under one of the policies, is not, by reason of that relationship, within the class of permissible beneficiaries under the Statute, 38 U.S.C.A. § 802(g). She rested her claim upon the allegation that she stood in the relation of in loco parentis to the insured. The evidence presented in support of her claim was insufficient to support her allegation and hence her claim was denied.

The dispute remaining for present determination is between the plaintiff, the surviving father, and the defendants, the surviving half-brothers and half-sisters, of the deceased soldier.

The statutory provisions which govern the payment of the benefits under the insurance here involved are contained in Section 602 of the National Service Life Insurance Act of 1940, as amended, and are as follows:

"Sec. 602(g). The insurance shall be payable only to a widow, widower, child * * * parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, * * *." As amended, 56 Stat. 659, 38 U.S.C.A. § 802(g).

"Sec. 601(f). The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." 56 Stat. 659, 38 U.S.C.A. § 801(f).

"Sec. 602(i). If no beneficiary is designated by the insured or if the designated beneficiary does not survive the insured, the beneficiary shall be determined in accordance with the order specified in subsection (h) (3) of this section * * *. The right of any beneficiary to payment of any installments shall be conditioned upon his or her being alive to receive such payments. No person shall have a vested right to any installment or installments of any such insurance and any installments not paid to a beneficiary during such beneficiary's lifetime shall be paid to the beneficiary or beneficiaries within the permitted class next entitled to priority, as provided in subsection (h) of this section. * * *." 54 Stat. 1010, 38 U.S.C.A. § 802(i).

"Sec. 602(h). Such insurance shall be payable in the following manner: * * *

(3) (C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;

(3) (C) if no widow, widower, or child, or parent, to the brothers and sisters of the insured, if living, in equal shares." as amended, 56 Stat. 659, 38 U.S.C.A. § 802(h) (3) (C) and (D).

The phrase "brothers and sisters of the insured", as used in the Act, includes brothers and sisters of the half blood. Woodward v. United States, 8 Cir., 167 F. 2d 774, 777-779.

The facts may be briefly stated. At the time of the birth of the insured, his father and mother were living at a small mining village in Kentucky known as Indian Head. Nine days after his birth, his mother died, and the plaintiff with his infant child went to live at the home of his father, Abraham Strunk. Several of the plaintiff's unmarried sisters were then living at the home of their father and naturally they took an interest in the baby of their brother and to a large extent provided the care and attention of which the child was deprived by the death of his mother. The plaintiff continued his labors in the coal mines and from his earnings provided such things as were needed to be bought for the baby. After a few years, plaintiff's sisters married and left the home of their father. The plaintiff remarried and moved to a distant part of the state. When he sought to take his son to his new home, the child's grandfather, Abraham Strunk, having become greatly attached to his young grandson, insisted that the child remain with him, and the plaintiff consented. Thereafter the insured continued to live at the home of his grandfather until he joined the CCC camp. Upon his return from the camp, he stayed for a while at the home of the plaintiff and worked in the mines, later returning to the home of his grandfather where he remained until he entered the Army. He regarded his grandfather's home as his home and in designating his grandfather as beneficiary of his insurance he referred to him as his "father". The plaintiff occasionally visited his son and his father and the relationship was understood and agreeable to all parties concerned.

Abraham Strunk was a man of some means. He was amply able to provide and

care for his grandson. The plaintiff was entirely dependent upon his earnings as a laborer in the coal mines. Under the circumstances, it was obviously in the best interest of the child that he be left at the home of his grandfather.

The claim asserted on behalf of the brothers and sisters of the insured rests upon the contention that it is established by the evidence that for many years Abraham Strunk stood in loco parentis to the insured and was the parent of the insured who last bore that relationship, within the meaning of section 602(h) (3) (C) of the Act, and he having died in January 1944 before the death of the insured and the half-brothers and half-sisters being "within the permitted class next entitled to priority," they are entitled to be paid the insurance under the provisions of section 602(i) of the Act.

■ The relationship described by the phrase "in loco parentis" and the extent to which such relationship may supersede the parental relation of a natural father to his own child are questions determinable only by the intention of the parties in the light of the attendant circumstances. Niewiadomski v. United States, 6 Cir., 159 F.2d 683.

Obviously a grandfather may assume the care and custody of his grandchild under circumstances entirely consistent with the continued existence of the natural relationship between the father and the child and without the slightest purpose or intention to sever the natural paternal relationship of the father.

Since all the rights of the grandfather to the insurance here involved are precluded by the fact that he died before the death of the insured, it is unnecessary to determine what his rights might have been had he survived.

■ The death of the grandfather terminated whatever parental relationship subsisted between him and the insured and removed whatever effect it had in supplanting or superseding the rights of the plaintiff as the natural father.

The assumed parental relationship of the grandfather affected the natural relationship of the plaintiff only during the life of the grandfather. Upon his death, all rights of the plaintiff, the only living parent of the insured, were revived. 39 Am. Jur. p. 615, § 25; Cain v. Garner, 169 Ky. 633, 185 S.W. 122, L.R.A.1916E, 682, Ann. Cas.1918B, 824.

■ Parental relationship when once established is presumed to continue and one who avers its discontinuance has the burden of proving it. Leyerly v. United States, 10 Cir., 162 F.2d 79, 86; Baldwin v. United States, D.C., 68 F.Supp. 657, 662. "* * * In every case the showing of such relationship, in the absence of anything more, makes out a prima facie case for the parents, which can be overcome only by the most solid and substantial reasons, established by plain and certain proofs. The burden of proof is not on the parent but on the opposing party, even where the latter has the actual custody of the child." 39 Am.Jur. p. 614, § 24.

■ Although at the time of his death, the insured was approximately 25 years of age, the fact that a parent is not legally obligated to support his adult child "does not necessarily negate the existence of the parental relationship." Strauss v. United States, 2 Cir., 160 F.2d 1017, 1019.

■ Section 602(h) (3) (D) provides for payment of insurance benefits to brothers and sisters of the insured only if no widow, widower, child or parent be living. It thus seems quite clear that brothers and sisters are without right or interest in the proceeds of National Service Life Insurance where a parent of the insured is living.

The plaintiff is the only living parent of the insured and the parent who last bore that relationship. Under Sec. 602(h) (3) (C) of the Act, he is entitled to the insurance.

■ The claim of the Government that it is entitled to credit for the amount of monthly installments of the insurance heretofore paid to Mrs. Grace Ramsey is not controverted and the credit should be allowed.

■ The sum of $75 should be allowed William A. Hamm for his services as

guardian ad litem for the infant brother and sister brought in as defendants by the Government.

The attorneys for the plaintiff are entitled to the statutory allowance for their services.

Judgment will be entered in conformity herewith.