**GIBBS v. UNITED STATES et al.**

**Civ. No. 141.**

United States District Court
E. D. North Carolina,
Washington Division.

Nov. 12, 1948.

W. Bailey, of Washington, N. C., and Dink James, of Greenville, N. C., for plaintiff.

Rodman & Rodman, of Washington, N. C., for defendant.

John B. McMullan, Asst. U. S. Dist. Atty., of Elizabeth City, N. C., and Howard H. Hubbard, Asst. U. S. Atty., of Clinton, N. C., for the U. S.

HENDERSON, District Judge.

This cause is now before me for judgment. It was tried before me in the Eastern District of North Carolina during the Regular October 1948 Term of the United States District Court, upon a designation by the Senior Judge of the Fourth Circuit, as provided by law, without a jury, and it was agreed in open Court by the attorneys for all the parties that judgment could be signed outside of said District.

It is an action on a contract of insurance entered into under the National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. § 801 et seq., which authorizes the proper beneficiary in such contract to bring suit against the United States in the District in which he resides.

The plaintiff is the principal beneficiary named in the contract in suit, and resides in Beaufort County and in the Eastern District of North Carolina, at Washington. The insured was a bastard. He was born in 1926, entered into the military service of the United States in February, 1943, at Fort Bragg, N.C., made application for and procured certificate of National Service Life Insurance N-8-364-704, which certificate was granted under authority of the aforesaid Act and amendments thereto, dated February 1, 1943, and countersigned February 26, 1943, in the sum of $10,000.00. In his application for the contract he gave plaintiff's relationship to him as that of father and made the plaintiff principal beneficiary, and James Lewis, the half brother, as contingent beneficiary. Elizabeth Lewis, unmarried, was the mother of Leander Lewis, insured, and James Lewis, contingent beneficiary. It appears from the evidence that the plaintiff is the putative father of Leander Lewis, insured, by Elizabeth Lewis, but that they were never married. The plaintiff was never judicially declared to be the father, and no order of court was ever made concerning their relationship or the maintenance, support and control of the insured, and the insured was never adopted by the plaintiff. James Lewis, the contingent beneficiary, was born October 17, 1933. His mother, Elizabeth Lewis, lived with her mother, Annie Cherry, until she died a short time after the birth of James Lewis, and after the death

908

of Elizabeth Lewis, James Lewis, contingent beneficiary, continued to live with his grandmother, Annie Cherry, with whom he now resides.

The plaintiff made claim for the insurance after the death of the insured, but the Veterans Administration made a full investigation and denied the plaintiff's claim and awarded the insurance to James Lewis, contingent beneficiary, who is a minor and the Guaranty Bank & Trust Company, of Greenville, North Carolina, is the duly appointed guardian and is acting as such.

Leander Lewis, insured, died in service February 22, 1945, at which time his certificate of insurance was in full force and effect, in the sum of $10,000.00. The Government admits its liability, but denies that the plaintiff is entitled to the insurance, but contends that James Lewis, the contingent beneficiary, is entitled to same. After the death of Leander Lewis, the Government paid to Guaranty Bank & Trust Company, Guardian for James Lewis, monthly installments in the amount of $55.10 until the institution of this action, making a total of approximately $1350.00. However, during the course of the trial, the plaintiff, through his attorneys, agreed with the Government, in open Court, by stipulation, that the Government having paid the $1350.00 in good faith, the plaintiff would not make any contention for the recovery of that sum in the event the plaintiff recovered in this action. So, the amount involved now is the balance of the $10,-000.00, beginning as of the institution of this action, which was the 18th day of February, 1948.

Three questions arise in this cause:

1. Is the plaintiff, being the putative father, entitled to recover as such in this action?

2. Was the plaintiff in loco parentis to the insured at any time during the life of the insured?

3. Is James Lewis, contingent beneficiary, entitled to recover in this action?

I shall deal with the first two questions together, since it now appears under the law that a putative father could only recover in this action provided he was in loco parentis to the insured.

■ It is generally conceded that the plaintiff was the putative father of the insured. A putative father as such does not come under the law governing beneficiaries in a case of this kind, but only in the event that he occupied the relationship of "in loco parentis". There is no question in my mind but that Leander Lewis, insured, was the son of Elizabeth Lewis by plaintiff, Joseph R. Gibbs, but they were never married, he was never adopted, and no order was made concerning his custody or support, and the relationship was never judicially determined. Therefore, the plaintiff is not a parent or father within the law governing beneficiaries entitled to recover insurance of this kind issued by the Government.

■ Before the plaintiff could recover in this action, he will have to show the relationship of "in loco parentis" to the insured. The facts seem to be against the plaintiff. He never brought himself within that relationship. Either before, or soon after, the birth of Leander Lewis, the plaintiff married a woman other than Elizabeth Lewis and set up housekeeping in the Town of Washington. They had one or more children, but Leander Lewis never lived in the home with the plaintiff, but with his mother, Elizabeth Lewis and grandmother, Annie Cherry, as long as his mother lived, and then continued to live with his grandmother, Annie Cherry. The insured was dependent upon his mother and grandmother for a place to live, support, maintenance, education and supervision. The grandmother, Annie Cherry, occupied the relationship with the insured of in loco parentis.

The plaintiff, Joseph R. Gibbs, was recognized by the insured as his putative father, and the plaintiff would occasionally give to Leander Lewis a small amount of money, and would associate with him at times, but never exercised any control over the insured, and never assumed the responsibility of a parent towards said child.

The plaintiff never put himself in the situation of a lawful father to the insured with reference to the office and duty of making provision for him. He never assumed the parental character and discharged the parental duties. What the

plaintiff did for the insured was incidental and occasional, and that the plaintiff never meant to assume the responsibilities of a legal father towards said child.

That Leander Lewis called the plaintiff "Father" and so designated him in the certificate of insurance. The insured recognized James Lewis as his brother and called him "Bud", and called his grandmother "Dear Grandmother" in writing. When the plaintiff filed claim for this insurance with the National Service Life Insurance Company, he stated in said claim as follows: "Joseph Gibbs, relationship Father. Annie Cherry, loco parentis, mother, and one half brother". The plaintiff recognized the Grandmother as being in loco parentis; and besides, after the death of Leander Lewis, his grandmother, Annie Cherry, received six months gratuity pay as provided by the regulations and law, and was also allotted $37.00 per month as a dependent person in loco parentis, and is also receiving the sum of $20.00 per month growing out of her relationship from the Guardian, as provided by law.

It is clear under the evidence in this case, that the grandmother, Annie Cherry, occupied the relation of in loco parentis; and that Joseph R. Gibbs was the putative father of the insured. It seems to be the law that the putative father is not entitled to recover as beneficiary unless he occupied the relationship of in loco parentis.

The National Service Life Insurance Act of 1946, 38 U.S.C.A. §§ 801(f), 802(g), read as follows:

"(f) The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption, persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year, and a stepparent, if designated as beneficiary by the insured."

"(g) Beneficiaries. The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or benefici-

aries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided: Provided, That the provisions of this subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy maturing on or after August 1, 1946."

The Veterans Administration has issued regulations as provided by law, and, among others, the following:

"3471. Parents, Brothers, and Sisters of Illegitimates.—If the insured was born an illegitimate and not legitimatized before his death, the terms 'parent', 'father,' 'mother,' 'brother' and 'sister' employed in the National Service Life Insurance Act, as amended, shall include as to relationship by consanguinity:

"(A) the Mother.

"(B) The father, only if he shall establish that he can meet 'in loco parentis' requirements of the act.

"(C) Brothers or sisters, only if children of the same mother. (October 8, 1940)"

Under the Code of Federal Regulations of the United States of America, Cumulative Supplement 33–45 with reference to beneficiaries, I quote (Sec. 10.3446, page 10007):

"Beneficiary designations. The insured shall have the right to designate a beneficiary or beneficiaries, but only within the following classes to be known as the permitted class of designated beneficiaries:

"Wife (husband), child (including an adopted child, stepchild, illegitimate child), parent (including parent through adoption, and persons who stood in loco parentis to the insured for a period of not less than one year prior to entry into active service), brother or sister (including those of the half blood) of the insured."

Code of Federal Regulations of the United States of America, 1946 Supplement 38–48, under the head of Beneficiaries Re-

vised, Sec. 10.3446, page 5848, I quote as follows:

"Beneficiary designations. The insured shall have the right to designate as beneficiary any person or persons, firm, corporation or other legal entity (including the estate of the insured) individually or as trustee, for insurance maturing on or after the date of enactment of Public Law 589, 79th Congress, approved August 1, 1946: Provided, That as to any insurance which matured prior to August 1, 1946 designated beneficiaries shall be restricted to persons within the permitted class of designated beneficiaries, as follows: Wife (husband), child (including an adopted child, stepchild, illegitimate child), parent (including parent through adoption, stepparent, and persons who stood in loco parentis to the insured for a period of not less than one year prior to entry into active service), brother or sister (including those of the half blood) of the insured."

The statute and the regulations relating to the Veterans insurance were made much more liberal as of August 1, 1946. Prior to that time, beneficiaries were limited to the classes set out in the Act of 1940 and the regulations thereunder. The designations of beneficiaries in this case is controlled by the National Service Life Insurance Act of 1940, since the insurance matured prior to August 1, 1946.

The word "father" and the word "parent" as used in connection with beneficiaries in Government Insurance under the War Risk Insurance Act of 1917, 40 Stat. 398, and under the National Service Life Insurance Act of 1940, does not mean that a putative father can take as the beneficiary in an insurance certificate issued by the Government to a member of the Military Service. One of the leading cases on this subject is Howard v. United States from the District Court of the Eastern District of Kentucky, decided October 3, 1924 and published in 2 F.2d 170. In this case the beneficiary was the illegitimate father of the insured. It is held in this case that a claim under the policy issued by the Government cannot be sustained unless under the law and evidence beneficiary named by the insured is entitled thereto, either as insured's father, or because one year prior to insured's induction he stood in loco parentis to the insured. It was held that the father of an illegitimate is not within the meaning of the word "parent" or "father" in the War Risk Insurance Act of 1917 and cannot be made beneficiary of a War Risk Policy. On pages 173 and 174 of 2 F.2d in the Howard case, several other cases are cited with approval, and in each and every one of them the term "parent" includes "father", but neither the parent nor father of an illegitimate child is entitled to be named as a beneficiary in a certificate of insurance such as was issued to Leander Lewis. For the purposes of this action, parent, father and child refer only to legitimate ones. The father of an illegitimate child can only take under the certificate provided he stands in the relationship of in loco parentis.

The relationship of in loco parentis is discussed fully in the Howard case, 2 F.2d page 175, etc., and I quote:

"The proper definition of a person in loco parentis to a child is a person who means to put himself in the situation of a lawful father of the child, with reference to the father's office and duty of making a provision for the child."

The Howard case cites 31 C.J., page 358, note 77, for a reference to the phrase in loco parentis, and said:

"When used to designate a person it means (1) one who means to put himself in the situation of a lawful father to the child, with reference to the office and duty of making provision for the child; * * * (2) one assuming the parental character and discharging the parental duties.

"Decisions are cited in support of each definition here given. One may therefore be said to stand in loco parentis to a child when he acts the part of a lawful father in performing the duty of providing for him, intending thereby to take his place in this particular. To bring about such relationship or status it is not essential that he act the part of the parent in any other particular".

In the case of Niewiadomski v. United States, 6 Cir., 1947, 159 F.2d pages 683, 686, the plaintiff brought suit against the

Government under a certificate issued by the National Service Life Insurance Company on April 1, 1942. The question presented is whether or not the appellant stood in loco parentis to the insured.

The facts in the Niewiadomski case are much stronger for the plaintiff than the facts in the present case. The Circuit Court in the Niewiadomski case gave its definition of the term in loco parentis as follows:

"The term 'in loco parentis,' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties. The opinions in both Meisner v. United States, supra, and Howard v. United States, supra, accept this view and approve such a definition. It clearly embodies more than furnishing material help to a close relative who is in need. One may be willing to furnish needed assistance to such a relative, even over an indefinite period of time, without being willing as the same time to assume the legal obligation of a parent. Due to the obligations and rights that arise out of such a relationship, the assumption of the relationship does not arise by chance, but is the result of intention. Both Meisner v. United States, supra, 295 F. [866] at page 868, and Howard v. United States, supra, 2 F.2d at page 175 recognize the necessity of that basic element. See also Miller v. United States, 8 Cir., 123 F.2d 715, 717. At common law a parent is charged with the duty of educating and supporting a minor child, and with a continuing obligation thereafter in certain cases of physical or mental disability. A parent has the right to the custody and control of a minor child together with the authority to take such disciplinary measures as are reasonably necessary to discharge the parental duty. A parent who is providing a home for his minor son and supporting him is entitled to his services and earnings. The same rights and duties exist when the relationship of in loco parentis

has been intentionally assumed and established."

Therefore, I am of the opinion that the plaintiff is not entitled to recover in this action and that the same should be dismissed. The findings of fact, conclusions of law and judgment of dismissal will be filed with the Clerk of the Federal Court at Washington, N. C., in accordance with this opinion.