**HAWKEY v. UNITED STATES et al.**
**Civ. No. 846–D.**

United States District Court
E. D. Illinois.

Dec. 4, 1952.

942

Eugene Bland, Shelbyville, Ill., Parker, Bauer & Parker and George H. Bauer, all of Effingham, Ill., for plaintiff.

William W. Hart, U. S. Atty., Danville, Ill. and Ernest R. McHale, Asst. U. S. Atty., East St. Louis, Ill., for defendant United States of America.

M. C. McCallen, Effingham, Ill., guardian ad litem for minor defendants.

McCollum & McCollum, Louisville, Ill., for defendants and counterclaimants Pauline Cornell and Bert Jenkins.

PLATT, District Judge.

Anna Hawkey, mother of Elsworth Jenkins, a deceased veteran, filed suit against the United States of America to obtain the undispersed proceeds of two $5,000 National Service Life Insurance certificates. Eleven half brothers and sisters, Bert Jenkins, putative father, and Bert Jenkins's daughter Pauline Cornell were made parties defendant. Answers were filed by the United States of America, the half brothers and sisters who were minors by a guardian ad litem, some of the other half brothers and sisters, Bert Jenkins, and Pauline Cornell. The latter two defendants filed counterclaims. Pauline Cornell claimed the proceeds (1) by being named beneficiary under one policy; (2) by being a half sister of the deceased; and (3) by standing in loco parentis to the insured veteran. If Pauline Cornell was not entitled to the proceeds, Bert Jenkins claimed them (1) as the father of the insured; (2) as the contingent beneficiary of one policy; and (3) by virtue of having stood in loco parentis to the deceased.

The Veterans' Administration denied plaintiff's claim prior to this suit. The court finds that it has jurisdiction of the subject matter,[1] and of all the parties. Personal service was had upon the minors and all other defendants who did not file answers herein. The cause was submitted to the court and evidence was heard.

The undisputed facts disclose that Elsworth Jenkins died while in the service of his country on September 28, 1943. He had in full force and effect at the time of his

1. 38 U.S.C.A. § 817.

death the two $5,000 certificates of National Service Life Insurance. One policy designated Pauline Cornell as first beneficiary and Bert Jenkins as contingent beneficiary. The second policy named Harriet Simmons as beneficiary. Elsworth Jenkins died leaving him surviving neither widow nor child. His maternal grandmother Harriet Simmons, his natural mother Anna Hawkey, his stepfather Lewis Hawkey, eleven half brothers and sisters born of Anna Hawkey, his reputed father Bert Jenkins, and Bert Jenkins' daughter from a later marriage Pauline Cornell all survived him. The youngest of the half brothers and sisters born to his mother as a result of her marriage to Lewis Hawkey on March 28, 1920 was born in 1939 and the oldest in 1920. Anna Hawkey is now 53 years of age. Elsworth Jenkins was born October 16, 1918 or 1919. The putative father, Bert Jenkins, never married his mother Anna Hawkey. The Veterans' Administration made payments on the two policies to Harriet Simmons on the basis that she stood in loco parentis to the veteran for not less than one year prior to entry of the veteran into active service. Harriet Simmons died December 10, 1944 at the age of 71 years. A few payments were made by the Veterans' Administration to his half brothers and sisters born of Anna Hawkey after the death of Harriet Simmons. The plaintiff Anna Hawkey has expressly waived all claim to payments heretofore made on the two policies by the Veterans' Administration.

■ The court finds from a preponderance of the evidence that the parental relationship of Anna Hawkey as a mother continued until the insured veteran's death. The court further finds that there was no estrangement, no abandonment or lack of parental feeling between Elsworth Jenkins, the insured, and his mother Anna Hawkey prior to his death. Although it is of no significance to the decision in this case, the court finds from the evidence that Anna Hawkey stood in loco parentis to the deceased veteran for more than one year prior to the entry of the veteran into active service. The evidence clearly shows that Elsworth Jenkins lived with his mother and she cared for him until she was married to Lewis Hawkey. After her marriage, Elsworth remained continuously with his mother and stepfather until he was 14 years of age when he quit school and went to work. The only difference between Elsworth and his mother occurred when he wanted to quit school and she wanted him to continue. Mr. and Mrs. Hawkey lived in small homes of from three to five rooms. Elsworth, as well as some of the other children, spent some time with his maternal grandmother Harriet Simmons in her home which was close by. Harriet Simmons owned her own home, but she was in meager financial circumstances, and received an old-age pension from the State of Illinois the last few years of her life. Anna Hawkey as the mother of 12 children was a good parent to all her children and reared them all excellently under her economic conditions. Lewis Hawkey was a hard working laborer. He testified in behalf of Mrs. Hawkey and makes no claim herein. It is remarkable that the family was raised so well.

■ The court finds from the evidence that neither Pauline Cornell nor Bert Jenkins ever stood in loco parentis to Elsworth Jenkins. Pauline Cornell was friendly, generous, and kind to Elsworth.[2] In her behalf four letters written by Elsworth to her while in the service were offered in evidence. Objection was made to their admittance. These letters are purely hearsay and were not admissible in evidence. However, the court has examined the contents of these letters and finds nothing therein that would aid Pauline Cornell in establishing the relationship in loco parentis and no credible statement that could affect the relationship between Elsworth and his mother or his grandmother Harriet Simmons. They did show an affection toward Mrs. Cornell. In Niewiadom-

---

2. It was held in Bourbeau v. United States, D.C., 76 F.Supp. 778, that affection and generosity, without the idea of the usual parental relationship, does not place a person in loco parentis.

ski v. United States, 6 Cir., 159 F.2d 683, at page 686, in loco parentis is defined as follows:

"The term 'in loco parentis,' according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties."[3]

There never was a parental relationship existing between Elsworth Jenkins and Pauline Cornell. Bert Jenkins by his own admission never acted as a father toward Elsworth. Neither of them could possibly qualify under the evidence as having stood in loco parentis to Elsworth.

The certificates of insurance were issued pursuant to the National Service Life Insurance Act of 1940, amendments thereto, and regulations thereunder.[4] The pertinent sections of the National Service Life Insurance Act of 1940 in force prior to the amendment of 1946 provide in part as follows:

Sec. 602(g). "The insurance shall be payable only to a widow, widower, child * * *, parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, *but only within the classes herein provided, * \*.*" (Emphasis supplied.) 38 U.S.C.A. § 802(g).

Sec. 601(f). "The terms 'parent', 'father', and 'mother' include a father, mother, * * * persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." 38 U.S.C.A. § 801(f).

Sec. 602(i). " * * * The right of any beneficiary to payment of any installments shall be conditioned upon his or her being alive to receive such payments. No person shall have a vested right to any installment or installments of any such insurance and any installments not paid to a beneficiary during such beneficiary's lifetime shall be paid to the beneficiary or beneficiaries within the permitted class next entitled to priority, as provided in subsection (h)." 38 U.S.C.A. § 802(i).

Sec. 602(h). "Such insurance shall be payable in the following manner:

\* \* \* \* \* \*

"(3) * * *

\* \* \* \* \* \*

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;

"(D) if no widow, widower, child, or parent, to the brothers and sisters of the insured, if living, in equal shares." 38 U.S.C.A. § 802(h) (3).

The Administrator's regulation, 38 CFR 8.71, provides as follows:

"Parents, brothers, and sisters of illegitimates. If the insured was born an illegitimate and not legitimatized before his death, the terms 'parent,' 'father,' 'mother,' 'brother,' and 'sister' employed in the National Service Life Insurance Act, as amended, shall include as to relationship by consanguinity:

"(a) The mother.

"(b) The father, only if he shall establish that he can meet 'in loco parentis' requirements of the act.

"(c) Brothers or sisters, only if children of the same mother." 38 CFR 10.3471, 1943 Supp.

■ It is very clear that this regulation rejects Pauline Cornell and Bert Jenkins[5]

---

3. Also see Lewis v. United States, D.C., 105 F.Supp. 73, 75; Howard v. United States, D.C.Cir., 2 F.2d 170, 175.

4. National Service Life Insurance Act of 1940, § 608, 38 U.S.C.A. § 808.

5. It has been held that the putative father does not qualify as a permitted beneficiary under the National Service Life Insurance Act of 1940. Gibbs v. United States, D.C., 80 F.Supp. 907.

as permissible beneficiaries within said Sec. 802(g). Neither Pauline Cornell nor Bert Jenkins, as the court has already found, stand in loco parentis. Pauline Cornell was not a child of Anna Hawkey, the mother of Elsworth Jenkins, the deceased veteran, and is not within the permitted class of beneficiaries as a sister of the deceased veteran, as provided in Sec. 802(g) in effect in 1943 when the veteran died. Pauline Cornell as the designated beneficiary and Bert Jenkins as contingent beneficiary under one $5,000 policy cannot avail themselves of an amendment eliminating the permitted class of beneficiaries after the certificates of insurance had matured.[6] The amendment of Sec. 802(g) in 1946 expressly states:

> "Provided, That the provisions of this subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy *maturing on or after August 1, 1946."* (Emphasis supplied.)

We come now to the claim of the plaintiff Anna Hawkey to the remaining payments on the two certificates of insurance. She plainly comes within the provisions set forth hereinabove.[7] She was not designated as a beneficiary but there was no designated beneficiary within the permitted classes as provided by Sec. 802(g) and the regulation 8.71, unless Harriet Simmons was considered as a parent standing in loco parentis to the veteran. Since Anna Hawkey has waived her rights to all prior payments, it is not necessary to discuss the rights of Harriet Simmons as against Anna Hawkey. This question is moot. Assuming that Harriet Simmons was entitled to the payments she received, there can be no doubt that Anna Hawkey is now entitled to the amount due under both policies. In U. S. v. Henning, 73 S.Ct. 114, United States Supreme Court, the policy of insurance was payable to the veteran's father who died five months after the veteran. The father left surviving him

a second wife. The veteran's natural mother also survived him. The District Court, 93 F.Supp. 380, found that the stepmother stood in loco parentis to the insured at least one year prior to his entry in the active service, and that the natural mother had not abandoned the child. The stepmother died leaving surviving the natural mother. The court there said, 73 S.Ct. at page 120:

> "Section 602(h)(3)(C), too, has a historical setting. The National Service Insurance Act as enacted in 1940 confined the class of devolutionary takers to the spouse and blood relatives of the insured. So written the legislation proved unsatisfactory in practice. As construed, that provision required payment of proceeds to an insured's natural parents though they had abandoned him to be raised and supported wholly by foster parents, the latter being excluded from participation by the Act. Upon recommendation of the Veterans Administrator, Congress in 1942 amended the Act to foreclose that result. Persons who stood in loco parentis to the insured for at least one year prior to his entry into active military service were included within the Act's definition of 'parent.' And they qualified as takers by devolution if they 'last bore that relationship' to the insured, an essential statutory condition to preclude the parceling out of proceeds among a series of transient hosts and to assure full benefits to those most likely to merit the insured's financial support. The *thrust of the amendment thus was directed at the inclusion of worthy foster parents, not the exclusion of natural parents however deserving."* (Emphasis supplied.)

The Supreme Court there held that the mother who had not abandoned the child was entitled to take by devolution. Granting that the Veterans' Administration properly paid Harriet Simmons, the grand-

6. Walker v. United States, 7 Cir., 180 F. 2d 217.

7. 38 U.S.C.A. §§ 802(g), 801(f), 802(i); 38 CFR 8.71 (38 CFR 10.3471 1943 Supp.).

mother, as standing in loco parentis, upon her death Anna Hawkey is entitled to the remaining payments under both policies.[8]

The half brothers and sisters of the deceased veteran, born of Anna Hawkey, have no right at this time in the proceeds due on said insurance certificates under Sec. 82(h)(3)(C) and (D).[9] Anna Hawkey has waived any claim to any prior payments by the Veterans' Administration to these children. Therefore, it is not necessary to discuss their rights to the payments they have already received.

I conclude that Anna Hawkey so long as she lives should receive the proceeds payable on the two certificates of National Service Life Insurance on the life of Elsworth Jenkins, subject to the payment of a reasonable fee to the guardian ad litem and the statutory fee allowed to plaintiff's attorneys.

Findings of fact and conclusions of law and order in accordance with the views expressed may be submitted.

---

8. Also see Strunk v. United States, D.C., 80 F.Supp. 432; Lewis v. United States, supra.

9. Brothers and sisters of the insured, as used in the act, includes brothers and sisters of the half-blood. Woodward v. United States, 8 Cir., 167 F.2d 774, 777–779.