O'BRIEN, EDWARD T. BARTLETT, HAIGHT, WERNER and HISCOCK, JJ., concur; CULLEN, Ch. J., absent.

Judgment of conviction affirmed.

---

In the Matter of the Application of CHARLES H. MACRAE et al., Appellants, for the Vacation of a Decree of Adoption.

JAMES H. ROGERS et al., Respondents.

1. ADOPTION — CONSENT OF NATURAL PARENT — WHEN NOT REQUIRED. The consent of the parents or surviving parent of a legitimate child is necessary, under the provisions of section 6. of the Domestic Relations Law (L. 1896, ch. 272) to a legal adoption, but after the adoption is allowed and confirmed the natural parents cease in law to sustain such relation, the foster parents or the survivor of them, in the event of a second adoption, being treated as the parents or surviving parent of whom consent is necessary, and upon the death of both such foster parents the natural parents are vested with no rights, authority or duty in law regarding the minor which would require their consent to a second adoption.

2. SAME — WHEN MOTION TO SET ASIDE ADOPTION FOR WANT OF NOTICE TO, AND CONSENT OF NATURAL PARENT PROPERLY DENIED. Where, therefore, a child has been, with the consent of its surviving natural parent, legally adopted and the foster parents thereafter die, the last surviving one naming in her will a testamentary guardian of the child, other than the natural parent, and thereafter on the petition of said guardian with whom the child at that time resided, an order is made granting the adoption of said child to the said guardian and her husband, the child being less than ten years of age and no consent from her having been obtained and no notice of the proceeding having been given to her natural surviving parent, a motion to set aside the second adoption for failure to give such notice and for failure to obtain the consent of such surviving natural parent to such second adoption is properly denied.

*Matter of MacRae*, 118 App. Div. 907, affirmed.

(Argued May 27, 1907; decided June 14, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 8, 1907, which affirmed an order of the New York County Surrogate's Court denying a motion to vacate and set aside an order of adoption.

The facts, so far as material, are stated in the dissenting opinion.

*William C. Beecher* and *Cortland Betts* for appellants. The order of adoption was void for want of consent of the child's father. (L. 1896, ch. 272, § 61, subd. 3.) The child in question had not been abandoned. (*Hale* v. *Oldroyd*, 14 M. & W. 789; *Johnson* v. *Mallory*, 40 Cal. 299; *Stephens* v. *Mansfield*, 11 Cal. 363; *Shannon* v. *People*, 5 Mich. 89.) The father of the child should have been notified of the respondent's application for her adoption. (*Schlitz* v. *Roenitz*, 86 Wis. 31; *Humphrey's Appeal*, 137 Mass. 84; *Lee* v. *Back*, 30 Ind. 148; *Ferguson* v. *Jones*, 17 Oreg. 204; *Binger* v. *Frakes*, 67 Iowa, 460; *Winans* v. *Luppie*, 47 N. J. Eq. 302; *People ex rel. McKinney* v. *Stinson*, 13 App. Div. 111.)

*W. C. Prime* and *E. L. Morse* for respondents. By the adoption of Madeleine Hope MacRae, with the consent of her father, his legal relation of father was forever terminated, and upon any subsequent adoption of said child the consent of the natural father, Charles H. MacRae, was unnecessary. (L. 1896, ch. 272, § 61; *Matter of Thorne*, 155 N. Y. 140.)

CHASE, J. The order of the surrogate denying the appellant's motion to set aside the second adoption of Madeleine Hope MacRae was, in my judgment, rightly affirmed. In this state the authority for the adoption of children is wholly dependent upon the statutes. (*Matter of Thorne*, 155 N. Y. 140.)

A state may authorize its courts in the exercise of the power and duty of *parens patriæ* to conduct proceedings for the adoption of minor children without notice by publication or otherwise to the child, its parents, relatives or next of kin.

(*Van Matre* v. *Sankey*, 148 Ill. 536; *S. C.*, with note, 39 Am. St. Rep. 196; *Matter of Williams*, 102 Cal. 70; *Gibson, Appellant*, 154 Mass. 378.) I do not mean to approve the exercise of such authority by the state or attempt to define the legal effect of such an adoption. I am of the opinion that the legislature of this state should consider the advisability of providing by statute that notice must be given to the heirs at law and next of kin of a minor in every case where a judge or surrogate is asked to allow and confirm an adoption of such minor as provided by statute. However desirable it may be that such notice should be given there is now no provision in our statutes relating to adoption which requires notice to the heirs at law and next of kin of the minor or otherwise, except as it is included within the provisions of section 61 of the Domestic Relations Law which provides for the consent of the persons therein named. It is conceded that the adoption of Madeleine by her paternal grandfather and grandmother was regular, and that it resulted in giving to her and to her foster parents and in taking from her natural father the rights and authority as stated and provided by the statutes relating to adoption. Prior to the second adoption the will of Madeleine's foster mother had been duly admitted to probate and recorded, and letters of guardianship had been issued to Elizabeth P. Rogers as testamentary guardian of Madeleine thereupon. At the time of the second adoption, therefore, Elizabeth P. Rogers, the maternal grandmother of Madeleine, had the legal, as well as the actual custody of Madeleine. (Code Civil Procedure, sec. 2851.) The question for determination in this court is a very narrow one. Its answer should not be materially affected by the fact that a second adoption without the consent of the natural parents or the survivor of them would make serious abuses possible. The possibility of a wrong arising from a second adoption as in this case by a maternal grandmother and the testamentary guardian of the minor without the consent of its natural parent or parents is no greater than the possibility of a wrong arising from the

natural parents or parent arbitrarily refusing their consent to an adoption that would be to the great advantage of the minor.

I admit that if the consent of the natural parent of Madeleine is required by statute before a second adoption can be lawfully consummated that such consent goes to the very foundation of the jurisdiction of the court in allowing and confirming the adoption. Such consent, however, in my judgment, is not required by the statute.

Section 60 of the Domestic Relations Law provides:

" Adoption is the legal act whereby an adult takes a minor into the relation of child and thereby acquires the rights and incurs the responsibilities of parent in respect to such minor.     *     *     *"

Section 61 provides:

" Consent to adoption is necessary as follows:

" 1. Of the minor if over twelve years of age;

" 2. Of the foster parent's husband or wife, unless lawfully separated, or unless they jointly adopt such minor;

" 3. Of the parents or surviving parent of a legitimate child     *     *     *     but the consent of a parent who has abandoned the child, or is deprived of civil rights, or divorced because of his or her adultery or cruelty, or adjudged to be insane, or to be an habitual drunkard, or judicially deprived of the custody of the child on account of cruelty or neglect, is unnecessary.

" 4. Of a person of full age having lawful custody of the child, if any such person can be found, where the child has no father or mother living, or no father or mother whose consent is necessary under the last subdivision.     *     *     *"

Section 62 provides:

" 1. The foster parents or parent, the minor and all the persons whose consent is necessary under the last section, must appear before the county judge or the surrogate of the county where the foster parent or parents reside, and be examined by such judge or surrogate, except as provided by the next subdivision.

" 2. They must present to such judge or surrogate an instru-

ment containing substantially the consents required by this chapter, an agreement on the part of the foster parent or parents to adopt and treat the minor as his, her, or their own lawful child, and a statement of the age of the child as nearly as the same can be ascertained, which statement shall be taken *prima facie* as true. The instrument must be signed by the foster parent or parents and by each person whose consent is necessary to the adoption, and severally acknowledged by said persons before such judge or surrogate. * * *"

Section 63 provides :

"If satisfied that the moral and temporal interests of the child will be promoted thereby, the judge or surrogate must make an order allowing and confirming such adoption, reciting the reasons therefor, and directing that the minor shall thenceforth be regarded and treated in all respects as the child of the foster parent or parents. * * *"

Section 64 provides :

"Thereafter the parents of the minor are relieved from all parental duties toward, and of all responsibility for, and have no rights over such child, or to his property by descent or succession. * * * The child takes the name of the foster parent. His rights of inheritance and succession from his natural parents remain unaffected by such adoption. The foster parent or parents and the minor sustain toward each other the legal relation of parent and child and have all the rights, and are subject to all the duties of that relation, including the right of inheritance from each other, * * * and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting. * * *"

Section 66 provides :

"A minor may be deprived of the rights of a voluntary adoption by the following proceedings only :

"The foster parent, the minor and the persons whose consent would be necessary to an original adoption, must appear before the county judge or surrogate of the county where the

foster parent resides, who shall conduct an examination as for an original adoption. If he is satisfied that the abrogation of the adoption is desired by all parties concerned, and will be for the best interests of the minor, the foster parent, or minor and the persons whose consent would have been necessary to an original adoption shall execute an agreement, whereby the foster parent and the minor agree to relinquish the relation of parent and child and all rights acquired by such adoption, and the parents or guardian of the child or the institution having the custody thereof, agree to reassume such relation.   *   *   *   From the time of the filing and recording thereof the adoption shall be abrogated, and the child shall reassume its original name and the parents or guardians of the child shall reassume such relation. Such child, however, may be adopted directly from such foster parents by another person in the same manner as from parents, and as if such foster parents were the parents of such child."

The general rights of adopted children have frequently been considered by this court. In *Matter of Cook* (187 N. Y. 253) the court say: "The legislature has ordained that there shall be no difference in the right to inherit between a child by adoption and his heirs at law and next of kin and a child by nature and his heirs and next of kin and the courts as in duty bound have obeyed the command   *   *   *.   The natural relation and the statutory relation are made one and the same as to the devolution of property   *   *   *.   In the eye of the law, therefore, adopted children are lineal descendants of their foster parent." (See *Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127.)

The adoption divests the natural parents of the relation which they had theretofore sustained toward the infant and such change of relation is in no way affected by the death of the foster parent or parents.

Madeleine continued after the death of her foster parents as much their child in law as if she had been born to them. (*Dodin* v. *Dodin*, 16 App. Div. 42.) By the first adoption the petitioner was by the express terms of the statute relieved

from all parental duties toward and all responsibility for her. Such relief from parental duties and responsibilities was not for a limited time or for the life of the foster parent, but forever, unless the relation of a parent and child between the natural parents or parent and the minor was reassumed and the relation by adoption abrogated in the form prescribed by said section 66 of the Domestic Relations Law.

The possibility of a reassumed parental relation by the natural parents is wholly dependent upon a new proceeding before the judge or surrogate.

In determining the meaning of section 61 of the Domestic Relations Law the general purpose, intent and scheme of the statute must be taken into account and the last clause of section 66 of the Domestic Relations Law, which I repeat, as follows, " Such child, however, may be adopted directly from such foster parents by another person in the same manner as from parents, and as if such foster parents were the parents of such child," is very significant as showing by the express language of the statute that it is not necessary that the natural parents consent to a second adoption. A second adoption of Madeleine could have been had and the same could have been allowed and confirmed by the judge or surrogate in the lifetime of her foster parents or the survivor of them without the consent of the petitioner. In such case the foster parents or the survivor of them would have been treated as the parent or surviving parent of whom consent is necessary as provided in said section 61 of the Domestic Relations Law.

If, as we have seen, the consent of the appellant to a second adoption was not necessary from the time of the consummation of the first adoption until the death of the survivor of the foster parents, I am unable to see by what reasoning it can be assumed or held that the petitioner became vested with any rights, authority or duty in law regarding the minor or that required his consent to her second adoption. Clearly his responsibility for the infant and the infant's maintenance was not reassumed in law or in fact by anything that occurred after the first adoption.

The " parents or surviving parent " in said section 61 means one who still possesses some right to the custody or control of the child which he or she can relinquish. (*Nugent* v. *Powell*, 4 Wyo. 173.)

The consent of the parents or surviving parent of a legitimate child is necessary to a legal adoption, but after the adoption is allowed and confirmed the natural parents or surviving parent cease in law to sustain such relation to the minor and the consent to the second adoption must be given by the foster parents or the survivor of them.

The order shou'd be affirmed, with costs.

CULLEN, Ch. J. (dissenting).    Madeleine H. MacRae was the daughter of the appellant, Charles H. MacRae.    She was born March 23d, 1895.    After her mother's death and on October 12th, 1897, with the consent of her father, the appellant, said Madeleine was regularly adopted by her paternal grandparents, Charles H. MacRae and Mary J. MacRae.    She lived with her foster parents until the death of the survivor, Mary J. MacRae, who deceased in June, 1905.    Said Mary left a will by which she appointed Elizabeth P. Rogers, one of the respondents herein and the maternal grandmother of Madeleine, as her guardian.    On January 12th, 1906, on the petition of Mrs. Rogers, the guardian with whom Madeleine then resided, an order was made granting the adoption of said infant to her said guardian, Mrs. Rogers, and the husband of the latter by a second marriage and not the grandfather of the infant.    Madeleine, at the time of this adoption, was less than ten years of age, and hence there was no consent from her and no notice of the proceeding was given to the appellant, her natural father.

Madeleine died on April 12th, 1906, possessed of an estate of about $9,000.    Thereafter the respondent James H. Rogers, as the foster father of said infant, took out letters of administration upon her estate.    Subsequently the appellant, her natural father, applied to the surrogate to vacate the second order of adoption on the ground that it was made

without consent by or notice to him. The application was denied and the Appellate Division has affirmed the order of the surrogate. From the order of the Appellate Division this appeal is taken.

The controversy presents questions of great importance, not on account of the amount here involved, but as suggesting the possibility of affecting the right of succession to estates of very great value by the method of adopting children. Undoubtedly our statute on the subject deserves careful scrutiny and revision by the legislature, as its provisions afford not only an ample field for litigation, but for the commission of much wrong. The only question, however, presented for determination in the present case is the necessity for consent by and notice to the natural father of the child to authorize the second order of adoption. The subject is regulated by article 6 of the Domestic Relations Law (L. 1895, ch. 372). By section 61 of that statute consent to adoption must be obtained of the following persons : " 1. Of the minor, if over twelve years of age (not applicable to this case); 2. Of the foster parents husband or wife, unless lawfully separated, or unless they jointly adopt such minor ; 3. Of the parents or surviving parent of a legitimate child,   *   *   *   but the consent of a parent who has abandoned the child, or is deprived of civil rights, or divorced because of his or her adultery or cruelty, or adjudged to be insane, or to be an habitual drunkard, or judicially deprived of the custody of the child on account of cruelty or neglect, is unnecessary." Under this provision standing alone it is quite plain that the parents' consent is requisite to the validity of the second order of adoption. But it is contended that under the subsequent provisions of the statute the parent on the first adoption ceased to be her parent, and also that he thereupon abandoned his child. Section 64 defines the effect of adoption : " Thereafter the parents of the minor are relieved from all parental duties toward, and all responsibility for, and have no rights over such child, or to his property by descent or succession.   *   *   *   The child takes the name of the foster parent. His rights of inheritance and

succession from his natural parents remain unaffected by such adoption.   The foster parent or parents and the minor sustain toward each other the legal relation of parent and child and have all the rights, and are subject to all the duties of that relation, including the right of inheritance from each other, * * * and such right of inheritance extends to the heirs and next of kin of the minor, and such heirs and next of kin shall be the same as if he were the legitimate child of the person adopting, but as respects the passing and limitation over. of real and personal property, dependent under the provisions of any instrument on the foster parent dying without heirs, the minor is not deemed to be the child of the foster parent so as to defeat the rights of the remainderman." It will be seen that both in this and in the other sections of the statute the distinction of nomenclature is uniformly observed.   The true parent is termed the parent, while the adopting one is termed the foster parent. It is aptly said in *Commonwealth* v. *Nancrede* (32 Pa. 389): "Giving an adopted son a right to inheritance does not make him a son in fact." Equally, imposing on the foster parent the obligations and responsibilities of a parent does not make him a parent in fact.   The statute does not wholly dissever the relations between the adopted child and his real parents.   On the contrary, it expressly provides that "His rights (those of the child) of inheritance and succession from his natural parents remain unaffected by such adoption." Thus, under a similar statutory provision it has been held in Iowa that children adopted by the maternal grandfather were entitled, on his death, after that of the mother, to the mother's share by representation in addition to their share as children by adoption. (*Wagner* v. *Varner*, 50 Iowa, 532.) Moreover, by section 66, provision is made for the abrogation, in a proper case, of an act of adoption, where it is desired by all parties concerned, including those whose consent was necessary to the adoption.   Thus there remains in the natural parent what, for lack of a better name, I may call a possibility of reversion.   In the present case, though the father cannot succeed to the whole estate of which his child died intestate,

by virtue of the adoption by his own parents, he became one of the next of kin and would be entitled to a brother's share. Nor can the omission to give notice to the father be justified on the theory of abandonment. First, because securing the care and support of the child by proper persons was not an abandonment (*Luppie* v. *Winans*, 37 N. J. Eq. 245), and in the second place, because he was entitled to a notice and hearing on that very question, whether he had or not abandoned the child. (*Humphrey, Appellant*, 137 Mass. 84.)

It seems to us that every argument of policy is in favor of so construing the statute as to require notice of the proposed adoption to be given to every person whose interest may be affected by the adoption, so far as the statute will reasonably permit of that construction. Where no one living is entitled to assert parental rights over the child, the person who has the lawful custody may, as guardian (and it may also be that such form of authority is unnecessary to constitute legal custody), as in this case, without the consent of the child itself, by an *ex parte* application to the surrogate or county judge, obtain an order of adoption and secure the right to inherit as against those who would otherwise be entitled to succeed to the child's estate. This, in the case of a sickly child possessed of a large fortune, might prove extremely profitable. In this case the infant, then in ill-health, was adopted in January and died in April of the same year. The statute has apparently opened a new field of industry. The act, even as we construe it in this case, protects only the rights of living parents, and we venture to suggest that it should be so amended that in the case of an infant having an estate, notice should be given to all of the next of kin who, if the child should die at the time intestate, would be entitled to its estate.

The order appealed from should be reversed and the motion granted, with costs in all courts.

Edward T. Bartlett, Werner and Hiscock, JJ., concur with Chase, J.; O'Brien and Haight, JJ., concur with Cullen, Ch. J.

Order affirmed.