**Alvah COOLEY, Appellant,**

v.

**Lillie WASHINGTON, Appellee.**

**No. 2018.**

Municipal Court of Appeals for the District of Columbia.

Argued July 23, 1957.

Decided Nov. 25, 1957.

# 584

George B. Parks, Washington, D. C., for appellant.

John L. Shortley, Washington, D. C., for appellee.*

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

The unusual contest between a natural mother and a stepmother for custody of a child whose adopting parents are deceased is the subject of review in this appeal.

In 1944 a son was born to appellant, who was unmarried at the time and living with her mother in Virginia. When the child was eighteen months old appellant's mother became ill, and in order that appellant might devote her full time and care to the mother, appellant's elder sister and brother-in-law, Carrie and Armstead Washington, assumed the care and upbringing of the child. The minor continued to live with the Washingtons in the District, frequently visiting appellant and her mother in nearby Virginia. In 1947, with appellant's consent, Carrie and Armstead Washington adopted the child pursuant to the provisions of our adoption statute then in effect.[1]

Carrie Washington died in October 1954, and in November 1955 Armstead Washing-ton married Lillie Washington, the appellee in this case. The death of Armstead followed in October 1956, and the child, who is now thirteen years of age, has remained with Lillie Washington, living in the home owned by Armstead at the time of his death. Appellant is now married and resides in Pennsylvania with her husband and their three-year-old son.

On the day of Armstead's funeral appellant requested custody of the child and upon refusal she brought this action. Subsequent to a default entered against Lillie Washington, the court permitted an answer to be filed and a hearing was accorded the parties. Appellant's request for custody was refused, the complaint dismissed, and this appeal taken.

■■ The argument is advanced by appellant that upon the death of the adoptors, the legal right to custody is revived and restored to the natural mother. See Baskette v. Streight, 106 Tenn. 549, 62 S.W. 142. Code 1951, § 16–205, which was in effect at the time of adoption, reads:

"Entry of a final decree of adoption shall establish the relation of natural parent and natural child between adoptor and adoptee for all purposes * * *. All rights and duties including those of inheritance and succession between adoptee, his or her natural parents, their issue, collateral relatives, and so forth, shall be cut off. * * *"[2]

Adoption is a creature of statute, and the court's authority must necessarily be measured by the statutory law. The unequivocal language of § 16–205 admits of one conclusion: a final decree of adoption in the District *decisively terminates* the former

---

\* Counsel's representation of the appellee was in his capacity as one of the attorneys connected with the Legal Aid Bureau.

1. Code 1951, § 16–201 et seq., later repealed by 68 Stat. 246 (1954). The adoption of children is now regulated by 68 Stat. 241 (1954), Code 1951, § 16–208 et seq. (Supp. V).

2. Code 1951, § 16–225 (Supp. V), provides that the new adoption statute, 68 Stat. 246 (1954), shall have no retroactive effect in the absence of specific provision. Sections 201–207 of Title 16, Code 1951, are therefore controlling in this case.

relationship of natural parent and natural child and the new status of the adoptee is created. Appellant's contention that the rights of the natural mother can be revived is therefore rejected as being inimical to the purpose and intent of the statute.[3]

■ But, if appellant's standing is that of a stranger in law, no greater right to custody exists in the appellee by reason of her relationship alone as a stepparent.[4] Neither does she have legal custody of the child by court order or statute. Indeed, if appellee has any status, she stands *in loco parentis*, a somewhat nebulous legal relationship of a temporary character dependent on the intention of the party assuming the obligations of a parent.[5] Because appellee's testimony discloses no real intent to maintain the child, we are unable to accord her any greater standing than that of appellant. Thus we are presented with the unusual case where no legally vested right to custody in either party is involved, though on this appeal counsel for both sides have urged such a right.

■ The action was instituted under Code 1951, § 11–762 (Supp. V), which grants jurisdiction of custody proceedings to the Domestic Relations Branch. In such cases the function of the court is clear: Whether the controversy arises between parents, parents and strangers, or between strangers, the probable welfare of the child is the controlling consideration and all questions of superior rights are entirely subordinated.[6] We recently asserted this well-established principle in Knight v. Knight, D.C.Mun.App., 134 A.2d 380.[7] While the trial court recognized that the best interests of the child were the primary concern, a sharp deviation from this principle became evident when it ruled as a matter of law that appellant had failed to prove by a preponderance of evidence that the appellee was an unfit person and had not properly cared for the child. This ruling appellant assigns as error. That evidence of this kind is admissible is not disputed; but to impose this as a burden of evidence, which appellant was required to meet in order to obtain custody, in effect transforms the nature of the hearing into an adversary proceeding and relegates to a secondary level an atmosphere receptive to evidence bearing upon the child's welfare. We think that if a burden was on either party in a proceeding of this kind, it was an affirmative burden upon both parties to offer evidence showing how each might better assist the child in his mental, physical, and moral development.

In stressing the importance of avoiding adversary characteristics in custody proceedings, the late Justice Cardozo, while a member of the New York Court of Appeals, wrote:

"* * * The [judge] in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the

3. For rulings on similar statutes, see In re Jobson's Estate, 164 Cal. 312, 128 P. 938, 43 L.R.A.,N.S., 1062; In re MacRae, 189 N.Y. 142, 81 N.E. 956; Ex parte Moulin, 203 Okl. 99, 217 P.2d 1029; In re Masterson's Estate, 45 Wash. 48, 87 P. 1047.

4. In re Adoption of Cheney, 244 Iowa 1180, 59 N.W.2d 685; London Guarantee & Accident Co. v. Smith, 242 Minn. 211, 64 N.W.2d 781; Popejoy v. Hydraulic Press Brick Co., 193 Mo.App. 612, 186 S.W. 1133.

5. See United States v. Rock, 92 U.S.App. D.C. 1, 200 F.2d 357; In re McCardle's Estate, 95 Colo. 250, 35 P.2d 850; Schneider v. Schneider, 25 N.J.Misc. 180, 52 A.2d 564.

6. 27 Am.Jur., Infants, § 108.

7. See also Bartlett v. Bartlett, 94 U.S. App.D.C. 190, 221 F.2d 508; Boone v. Boone, 80 U.S.App.D.C. 152, 150 F.2d 153; Holtsclaw v. Mercer, 79 U.S.App. D.C. 252, 145 F.2d 388; Barker v. Albright, 66 App.D.C. 296, 86 F.2d 852.

other or indeed against anyone. He acts as parens patriae to do what is best for the interest of the child. * * * He is not adjudicating a controversy between adversary parties, to compose their private differences. * * * "[8]

It is apparent that the total effect of this ruling was to subordinate evidence bearing upon the issue of the best interests of the child. Little weight was given to the positive testimony of the thirteen-year-old boy reflecting a desire to live with appellant; and less significance was attached to the fact that at no time did the stepmother evince any real affirmative desire to maintain the child, despite constant attempts by both the court and counsel to evoke a response indicative of her state of mind. She assumed a position of neutrality and asked only that a court determination of custody be made. In the same vein we point out that the court found as a fact that appellant's husband did not wish to adopt the child or to have him share equally with his own son if custody were awarded. This finding appears to be wholly inconsistent with the lengthy testimony of the witness on these questions.

The above points are singled out because of their close relationship to the well-being of the child. It is obvious to us that the value of testimony of this type was either destroyed or greatly diminished by the court's ruling on the evidentiary burden. We do not decide the question of custody, for the solution of that problem lies within the province of the trial court; but we do hold that this determination should be made in a judicial atmosphere adapted to serve the best interests of the child and not in the aura of an adversary proceeding.

Reversed with instructions to grant a new hearing.

8. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 626, 40 A.L.R. 937. See also in this connection Bartlett v. Bartlett, supra, note 7.