Angela **FULLER**, Appellant,

v.

Gerald **FULLER**, Appellee.

No. 4306.

District of Columbia Court of Appeals.

Argued July 29, 1968.

Decided Nov. 12, 1968.

**768**

Edward J. Skeens, Washington, D. C., for appellant.

Patrick W. Lee, Washington, D. C., for appellee; John P. Higgins, on the brief.

Before MYERS, KELLY and FICKLING, Associate Judges.

MYERS, Associate Judge.

This appeal concerns the legal duty of a husband to support, after divorce, the illegitimate child of his wife born prior to their marriage.

When the parties first met, in April 1962, appellant was four months pregnant. The baby was born in September 1962, and three months later the parties were married. In 1964 a child was born to the marriage; the following week the parties separated. It is not disputed that appellee is not the father of the child born prior to the marriage.

Appellee instituted divorce proceedings in September 1966. Appellant did not contest the divorce, but sought support for both children. The trial judge awarded support for the natural child of the parties, but held that appellee was under no continuing legal duty to support the older child.[1] From this finding the wife has appealed.

In seeking reversal of the trial judge's denial of support, appellant contends, first, that there was an express oral agreement between the parties that appellee would support the child and that this agreement survives the divorce. As evidence of the agreement, appellant alleges that prior to their marriage appellee assured her he would provide a good marital home and that her child would be included as part of the family unit. In our judgment, these representations were at most merely an inducement to persuade appellant to marry him, and no more than an offer to support her child in the same household. They certainly do not amount

1. At no time did appellee legally adopt the child born prior to the marriage.

to either a promise or an agreement to legally adopt the child or to extend support beyond the period of the marriage.

In an attempt to bolster her argument, appellant points out that a month after the birth of the child appellee had his name recorded on the birth certificate as the father of the child. However, acknowledgment of paternity upon the birth certificate by one not the natural father is not evidence of an agreement to support that child.[2]

Appellant also raises the doctrine of equitable adoption, urging that appellee, in effect, adopted the child when he acknowledged paternity and took her into the marital home. We rejected this doctrine in a prior decision,[3] and we adhere to our ruling in that case.

The trial judge found that appellee had treated the infant girl "in all matters as though she were his natural child," but such conduct is not tantamount to adoption. Adoption is a creature of statute, and the legal requirements and procedures incident thereto are fully set forth therein.[4] Formal adoption procedures are for the benefit of the child, and they cannot be circumvented or substituted by other procedures. No matter what the beliefs of the parties may have been, appellee did not, by taking the child into the family circle, effect an adoption of her, thereby imposing upon him the attendant continuing obligation of support and entitling the child to certain other legal rights. Any theory of adoption is based upon the proposition that the child is wanted for its own sake, and not upon the proposition that it is accepted incidentally as a result of marriage to the mother.[5]

Appellant further contends that the doctrine of equitable estoppel precludes a finding that there was no continuing duty upon appellee to support the prenuptial child of appellant. Equitable estoppel to deny a duty to support can be invoked only upon a showing that there was an express or implied misrepresentation of fact inducing another to alter his position to his prejudice.[6] The record before us fails to disclose such elements of equitable estoppel as would justify a reversal. It is true that appellee misrepresented to the Bureau of Vital Statistics and to the public generally that he was the natural father of the child. However, in the present case, equitable estoppel can run only in favor of the child and any misrepresentation made by appellee can have relevance only if made to her.[7] In this context, appellant relies solely on the fact that the child referred to appellee as "Daddy." This, however, does not evince such a misrepresentation on the part of appellee toward the child as would warrant the application of equitable estoppel in the circumstances of this case.

Furthermore, it has not been demonstrated that the child has been prejudiced. Appellant charges that denial of the application of equitable estoppel would have the effect of illegitimatizing the child. In the absence of the marriage of appellant to the natural father and an acknowledgment of paternity by him, the child is now and always has been illegitimate and the court is powerless to remedy that status by imposing upon appellee the paternal duty of support.

Appellant also argues that in marrying her and taking her daughter into his home appellee cut off any rights she or her

2. Clevenger v. Clevenger, 189 Cal.App.2d 658, 11 Cal.Rptr. 707, 90 A.L.R.2d 569 (1961).

3. Prager v. Smith, D.C.App., 195 A.2d 257, 259 (1963).

4. D.C.Code, 1967, § 16–301 et seq.; Cooley v. Washington, D.C.Mun.App., 136 A.2d 583 (1957).

5. Burke v. Burke, 216 Or. 691, 340 P.2d 948, 950 (1959). See also Kucera v. Kucera, N.D., 117 N.W.2d 810 (1962).

6. See 31 C.J.S. Estoppel § 67, p. 402 (1964).

7. Clevenger v. Clevenger, supra n. 2.

daughter had against the natural father. There is no merit to this contention. The duty of the natural father of an illegitimate child to support his child is a continuing one. It is one imposed by law, not by morality, and is not relieved by the subsequent marriage of the mother of the child to another.[8]

Neither misrepresentation nor prejudice against the child having been shown, we find no support for invoking the doctrine of equitable estoppel.

■ Appellant's final contention deals with the duty of support owed by one *in loco parentis*. This status was described in Niewiadomski v. United States, 159 F.2d 683, 686 (6th Cir. 1947), cert. denied, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859, as follows:

The term "in loco parentis," according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties.

This relationship involves more than a duty to aid and assist, more than a feeling of kindness, affection or generosity.[9] It arises only when one is willing to assume all the obligations and to receive all the benefits associated with one standing as a natural parent to a child.

The trial judge found that appellee during the marriage treated the child of appellant as his own. This finding is amply substantiated by the record, and we concede that appellee stood *in loco parentis* to the child and was under a duty to support her during that period. The question before us is whether this duty continues after divorce.

■ The status assumed by one *in loco parentis* is "a somewhat nebulous legal relationship of a temporary character dependent on the intention of the party assuming the obligations of a parent."[10] The continuance of that relationship is a matter which lies within the will of one standing *in loco parentis* and may be abrogated by him at any time.[11] It differs from adoption in that it is strictly temporary in nature, rather than permanent.[12] Upon divorce, where the child is no longer under the stepfather's care, his duty of support terminates in the absence of a showing that he intends to continue as one *in loco parentis*.[13] Appellee indicated his willingness to contribute voluntarily, but not under a court order, to the support of the child and he requested visitation privileges, but this does not demonstrate that he intends to continue permanently in the role of parent.

Under any theory advanced by appellant appellee cannot be held responsible for the continued support of her child under the circumstances of this case.

Affirmed.

8. D.C.Code, 1967, § 30–320. See Prager v. Smith, supra n. 3; Murphy v. District of Columbia, D.C.Mun.App., 85 A.2d 805 (1952) ; Peters v. District of Columbia, D.C.Mun.App., 84 A.2d 115 (1951).

9. Niewiadomski v. United States, 159 F.2d 683 (6th Cir. 1947), cert. denied, 331 U.S. 850, 67 S.Ct. 1730, 91 L.Ed. 1859; Hawkey v. United States, 108 F.Supp. 941 (D.C.Ill.1952).

10. Cooley v. Washington, supra n. 4, 136 A.2d at 585.

11. D. v. D., 56 N.J.Super. 357, 153 A.2d 332 (1959); State ex rel. Gilman v. Bacon, 249 Iowa 1233, 91 N.W.2d 395 (1958).

12. In re McCardle's Estate, 95 Colo. 250, 35 P.2d 850 (1934).

13. D. v. D., supra n. 11; Taylor v. Taylor, 58 Wash.2d 510, 364 P.2d 444 (1961) ; McDowell v. McDowell, Ky., 378 S.W.2d 814 (1964) ; Swain v. Swain, 250 Cal.App. 2d 1. 58 Cal.Rptr. 83 (1967).