In re K.J.

R.J., Appellant.

In re K.J.

B.J., Appellant.

Nos. 09–FS–1351, 09–FS–1352.

District of Columbia Court of Appeals.

Argued Nov. 17, 2010.
Decided Jan. 13, 2011.

Cynthia Nordone, for appellant R.J.

David S. Stein, for appellant B.J.

Stacy L. Anderson, Office of the Solicitor General, with whom Peter J. Nickles, Attorney General for the District of Columbia, and Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for the District of Columbia.

Lawrence H. Huebner, Guardian ad Litem, for K.J.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

## I.

The subject of these consolidated appeals is K.J., a female adolescent child. K.J.'s incarcerated mother, R.J., and ma-

ternal grandmother, B.J., appeal from the order entered following a bench trial in which each was found to have neglected K.J. Both R.J. (the "mother") and B.J. (the "grandmother") argue that there was insufficient evidence to find that they neglected K.J. in violation of D.C.Code § 16–2301(9)(A)(ii–iv) (2010 Supp.). We agree that there was insufficient evidence to find that the grandmother neglected K.J. and reverse that finding. The mother, in addition to arguing insufficiency, also argues that the trial court committed constitutional error in refusing to allow several of K.J.'s statements to be admitted as non-hearsay admissions by a party opponent. We disagree with both of those arguments, affirm the trial court's decision regarding the mother, and hold that there was sufficient evidence to find that her actions met the standard for neglect set forth in D.C.Code § 16–2301(9)(A)(iv).

## II.

K.J.'s mother was incarcerated on October 1, 2007. At that time K.J., who was born on October 27, 1995, was approaching her twelfth birthday. The mother granted a power of attorney to K.J.'s aunt, L.J., to take care of the child. After a few months, K.J. left her aunt's care and for the next year bounced between her maternal grandmother, her maternal grandfather, M.A., and one of her mother's friends, T.M., until finding relative stability for nearly seven months living in her grandmother's home. While K.J. was living under her grandmother's roof, her mother granted a power of attorney to K.J., the grandmother's twenty-three-year-old niece (the "niece") who was also living in the grandmother's home. The grandmother and her niece both cared for K.J. by providing her with food and clothing, taking responsibility for her at her school, and by setting rules for her.

On June 20, 2009, K.J. voluntarily left her grandmother's home because of certain discipline her grandmother was imposing. The preceding day, K.J. had been standing outside her grandmother's home wearing only pajama pants and a small t-shirt while talking to a group of teenage boys who were there to see if another teenager living in the grandmother's house was at home. K.J.'s grandmother told her to come inside, but K.J. refused. Her grandmother punished K.J. by "grounding" her inside for the weekend. K.J. responded by saying that she did not have to listen to her grandmother because she was not her mother. Her grandmother subsequently increased K.J.'s punishment to a full week. The next day, K.J. packed her bags and told her grandmother that she was leaving to stay at her godmother's house. The grandmother told her, "[y]ou go out that door, don't come back in my door." The niece also spoke with K.J. before she left, told her not to go and warned her that she would report K.J. as a runaway child if she left. K.J. left with her bags. The niece then reported K.J. to the police as a runaway, and gave them the address of the godmother.

On that same day, after K.J. arrived at her godmother's house, K.J.'s godmother called the police and asked them to take K.J. into custody. Metropolitan Police Department (MPD) Officers Jeremy Verdon and Kelan Edwards answered the godmother's call, and upon arrival ran a computer program and discovered that K.J. was listed as a missing person. The officers contacted the niece, who stated that she and K.J.'s grandmother shared custody of K.J. The niece then told the officer something to the effect that "we don't want her back here." Officers Verdon and Edwards then transported K.J. to the Child and Family Services Agency (CFSA).

Child Protective Services investigator Kerstin Magnuson received a call later the same day regarding the circumstances and began an investigation. During a thirty-day investigation period, many attempts were made at contacting family members of K.J. to find a suitable caregiver. Ms. Magnuson did succeed in contacting the niece, but determined that K.J. could not be released into her custody as an adequate caregiver because the niece did not have her own housing. Ms. Magnuson attempted to speak by telephone with the grandmother, left her voice mail messages, knocked on her door, and asked the niece to contact the grandmother on her behalf, but the grandmother never responded to Ms. Magnuson. Ms. Magnuson concluded that because there were no other placement options and the grandmother could not be contacted, K.J. should be placed in CFSA custody, and she was placed in a foster home.

CFSA social worker Karen Price had been assigned to K.J.'s case ten weeks before the time of trial. Upon receiving the assignment, Ms. Price gave K.J. a clothing voucher after realizing that all of K.J.'s clothes were too small to be worn in public. After visiting K.J. at her foster home and school, Ms. Price found that K.J. was happy, well-adjusted and wanted to be adopted. Ms. Price had not received any calls from the niece or the grandmother, and she did not meet with any maternal relatives before trial. K.J. stated that she would like to be adopted by her foster mother, and that was also Ms. Price's recommendation.[1]

### III.

The trial court found that the grandmother neglected K.J. by choosing not to let K.J. return to her home, and by failing to respond to inquiries during the CFSA investigation (Supp.App. at 17), and that this met the requirements for a finding of neglect set forth in D.C.Code § 16–2301(9)(A)(ii). It is there provided that a child is neglected if the child is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health." D.C.Code § 16–2301(9)(A)(ii). The record supports the trial court's finding that the grandmother was acting *in loco parentis,* although she was not the legal guardian of K.J. This court has noted that under D.C.Code § 16–2301(9)(A)(ii), if individuals are acting *in loco parentis* they can be found to have neglected a child if that child is "without" the requisite care. *In re B.C.,* 582 A.2d 1196, 1198 (D.C.1990). It does not follow, however, that ending an *in loco parentis* relationship is, by itself, grounds for a finding of neglect. *Fuller v. Fuller,* 247 A.2d 767, 770 (D.C.1968). In *Fuller,* we discussed the *in loco parentis* relationship as follows:

> The status assumed by one *in loco parentis* is a "somewhat nebulous legal relationship of a temporary character dependent on the intention of the party assuming the obligations of a parent." The continuance of that relationship is a matter which lies within the will of one standing *in loco parentis* and may be abrogated by him at any time. It differs from adoption in that it is strictly temporary in nature, rather than permanent.

*Id.* at 770 (quoting *Cooley v. Washington,* 136 A.2d 583, 585 (D.C.1957)). As one who has voluntarily assumed an *in loco parentis* relationship is free to end it at any time we must look at the circumstances surrounding the grandmother's termination of the relationship to determine whether the

1. There is no petition for K.J.'s adoption involved in this case.

evidence of the manner in which she terminated the relationship was sufficient to support a finding of neglect on her part.

■ In reviewing a sufficiency of the evidence claim, "we must consider the evidence in the light most favorable to the government, giving full play to the right of the judge, as the trier of fact, to determine credibility, weigh the evidence, and draw reasonable inference." *In re S.G.*, 581 A.2d 771, 774 (D.C.1990). A neglect adjudication is set aside only if it is plainly wrong or without evidence to support it. *In re Am.V.*, 833 A.2d 493, 497 (D.C.2003).

■ In the petition initiating this case, the District of Columbia alleged that the grandmother neglected K.J. On appeal, however, the District takes the position that there was insufficient evidence to find that the grandmother neglected K.J. We agree. We look first at the nature of the relationship between K.J. and her grandmother. In determining whether an *in loco parentis* relationship existed, this court has considered such things as whether the individual "supervised the children every day after school, accompanied them on weekend outings, and occasionally purchased food and clothes for them." *In re S.L.E.*, 677 A.2d 514, 522–23 n. 14 (D.C. 1996). Respondent lived in her grandmother's home for approximately seven months. The trial court found that there was an *in loco parentis* relationship because while K.J. was under her grandmother's roof, "she would cook for her, she would provide money for her when she could, she would go to school with her when she was suspended, she would make sure that she stayed in the house when she was suspended so that she would basically serve her school suspension at [her grandmother's] home."

Clearly, there was substantial evidence supporting the determination that K.J.'s grandmother acted *in loco parentis*. By telling K.J. that, if she left, she could not come back to her home, failing to contact CFSA after she left, and not responding to the investigator's inquiries about K.J., the grandmother severed that *in loco parentis* relationship. As we have pointed out, however, severing that relationship alone is not sufficient to establish neglect. *Fuller*, 247 A.2d at 770. To establish neglect it must be shown that the grandmother left K.J. "without" one of the statutory requirements of "proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health." D.C.Code § 16–2301(9)(A)(ii). After K.J. left her grandmother's house she was briefly at her godmother's house and then was in the custody of the CFSA.

■ The trial court's finding that the grandmother neglected K.J. was based entirely on the grandmother's choice not to allow K.J. to return to her home, and her failure to respond to CFSA's inquiries during its investigation. (Supp.App. at 17). The circumstances surrounding K.J.'s voluntary departure from her grandmother's home, the grandmother's choosing not to let K.J. return to her home, and the grandmother's failure to respond to CFSA messages do not support a finding that the grandmother neglected her. On the day of K.J.'s departure and in the aftermath, the grandmother did not force K.J. to leave. Before K.J. left her grandmother's home, she told her grandmother and the grandmother's niece that she was going to her godmother's house. The grandmother was aware that her niece thereupon called the police, reported that K.J. was a runaway child, and gave the police the godmother's address. Not long after K.J. arrived at her godmother's house, the godmother telephoned the police who came to that house, picked up K.J., and took her to CFSA, where K.J.

stated that she did not wish to return to her grandmother's home. Other arrangements for her care were promptly made by CFSA. K.J.'s grandmother did not terminate her *in loco parentis* status in a fashion that harmed K.J. or made the grandmother responsible for K.J.'s being without the statutory requirement of D.C.Code § 16–2301(9)(A)(ii). We recognize that the circumstances under which an *in loco parentis* relationship is terminated could warrant a finding of neglect, but that was not shown to be the case here. Accordingly, we reverse the trial court's finding of neglect on the part of the grandmother, B.J.

█ With respect to the mother, R.J., we affirm the ruling of the trial court that she neglected her daughter. Under D.C.Code § 16–2301(9)(A)(iv) a child is neglected when his or her "parent, guardian or custodian refuses or is unable to assume the responsibility for the child's care, control, or subsistence and the person or institution which is providing for the child states an intention to discontinue such care." D.C.Code § 16–2301(9)(A)(iv). After the mother was incarcerated in October 2007, she made several different arrangements for her daughter, but she did not make any arrangements for K.J. during the thirty-day CFSA investigation that led to CFSA's taking custody. The mother was unable to "assume the responsibility for the child's care" after the grand-

mother's words and conduct indicated "an intention to discontinue" care over the child, and the grandmother's niece was not deemed an adequate caregiver. *Id.*

█ The record shows that the mother made some efforts to be involved in K.J.'s upbringing. As the trial court found, the mother knew of the many challenges K.J. faced between October 2007 and June 2009, but she responded only intermittently. She also failed to make adequate alternative or emergency plans for when arrangements fell through. After K.J. was accepted back at the grandmother's home for the last time, her mother selected the niece, a young woman who had no home and no steady employment, as K.J.'s caregiver. The court questioned the "suitability" and appropriateness of that selection. The mother did not find a suitable arrangement for K.J. after she left her grandmother's care. While we recognize that the mother was making arrangements under the difficult circumstance of incarceration, it remains the case that the results of her efforts fell short, and left K.J. without the care required by § 16–2301(9)(A)(iv). Because the mother failed to arrange care for K.J. after she left her grandmother's home, there is sufficient evidence to support a finding of neglect on her part.[2] As we have determined the mother neglected K.J. under the standard as set forth in D.C.Code § 16–2301(9)(A)(iv) we need not reach a discus-

---

2. There is also sufficient evidence to hold that the mother neglected her daughter according to another section of the D.C.Code dealing specifically with incarcerated parents. That section provides that a child is neglected if their parent "is unable to discharge his or her responsibilities to and for the child because of incarceration...." D.C.Code § 16–2301(9)(A)(iii). For this section to apply, there must be a nexus between the incarceration and the inability to provide care. *See In re T.T.C.*, 855 A.2d 1117, 1119 (D.C.2004) (holding an incarcerated father's actions sat-

isfied the standard for neglect who initially made arrangements for his children to receive adequate care but failed to provide sufficient legal protection so that the children's drug-addicted mother could not take custody over them). Here, there seems to be a similar nexus between the mother's incarceration and her inability to take or amend custodial arrangements for K.J. However, we need not reach this issue as we affirm the determination that she neglected K.J. under D.C.Code § 16–2301(9)(A)(iv).

sion relating to D.C.Code § 16–2301(9)(A)(ii).

In our evaluation of the sufficiency of the evidence we have taken note of the mother's argument that the trial court erred in excluding several hearsay statements by K.J. when it determined that those statements were not admissions by a party opponent because K.J. was not a party to the proceedings, and the statements were not against her interest. Evidentiary rulings by the trial court are reviewed for abuse of discretion but, "[d]etermining whether a statement falls within an exception to the hearsay rule, on the other hand, presents a question of law which this court considers *de novo.*" *Brown v. United States,* 840 A.2d 82, 88 (D.C.2004). This court has followed Federal Rule of Evidence 801(d)(2), which provides that an out-of-court statement may be admissible if it is "made by a party and offered against the party." *In re Ty.B.,* 878 A.2d 1255, 1261–63 (D.C. 2005) (emphasis omitted). Rule 10 of the Superior Court Rules Governing Neglect and Abuse Proceedings states that "[t]he parties to a neglect proceeding shall include the District of Columbia, the child alleged to be neglected, and the parents, guardian or custodian." Super. Ct. Neg. R. 10.

While the trial court was mistaken in determining that K.J. was not a party to the proceedings, it did not err, and therefore did not abuse its discretion, in excluding the statements because they were not against K.J.'s interest. The mother argues that her daughter's statements provided evidence of a child who was well taken care of by the caregivers that the mother had arranged. While some of the statements do suggest that K.J. was at times provided adequate care, several of the statements also describe how K.J. had trouble due to her frequent moving be-

tween caretakers, and that her grandmother yelled and cursed at K.J. while she was in her care. K.J.'s interest was not in showing that she was inadequately cared for by any one caregiver, but that her constant moving back and forth between parties, and the absence of a willing caretaker during the period after she left her grandmother's house amounted to neglect. K.J.'s interest at the time of trial was in being adopted by her foster mother, and those statements about her travails support that interest. Her statements, therefore, were not against her interest and the trial court did not err in excluding them as hearsay. We are, in any event, satisfied that even if we assume that K.J.'s out-of-court statements should have been admitted, any "error was sufficiently insignificant to give fair assurance that the judgment was not substantially swayed by it." *In re Ty.B.,* 878 A.2d at 1267 (quoting *Brooks v. United States,* 599 A.2d 1094, 1102 (D.C.1991)).

Accordingly, the judgment on appeal herein with respect to R.J. is affirmed, and the judgment with respect to B.J. is reversed.

*So ordered.*