**Magdalene CAMPBELL & Fort Lincoln Civic Association, Inc., Appellants,**

v.

**FORT LINCOLN NEW TOWN CORPORATION, INC., et al., Appellees.**

**No. 11–CV–179.**

District of Columbia Court of Appeals.

Argued March 14, 2012.
Decided Oct. 4, 2012.

---

Bruce J. Terris, with whom Jane M. Liu, Washington, DC, was on the brief, for appellants.

Frederick D. Cooke, Jr., Washington, DC, for appellees.

Before GLICKMAN and EASTERLY, Associate Judges, and FARRELL, Senior Judge.

GLICKMAN, Associate Judge:

Magdalene Campbell and the Fort Lincoln Civic Association (collectively, "the Civic Association" or "appellants"), appeal from the trial court's dismissal of their suit against appellees, Fort Lincoln New Town Corporation, Inc., Fort Lincoln Realty Corporation, Inc., and Michele V. Hagans (collectively, "New Town" or "appellees"), under the District of Columbia Condominium Act ("Condominium Act").[1] Appellants contend that the trial court erred in ruling that their proffered theory of damages is foreclosed by our decision in an earlier phase of this litigation[2] and is, in any event, unduly speculative. We agree with appellants that their damages claim is not precluded by *Fort Lincoln I*, and in light of their proffer, we conclude that the trial court's rejection of it as too speculative was at best premature. Accordingly, we reverse and remand for further proceedings.

## I. Factual Background

### A. The Land Disposition Agreement and *Fort Lincoln I*

This case returns to us following our remand in *Fort Lincoln I*. Our opinion in that prior appeal described the factual

---

1. D.C.Code § 42–1901.01 *et seq.* (2010 Repl.).

2. *See Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.,* 944 A.2d 1055 (D.C. 2008) (*"Fort Lincoln I "*).

background of the litigation in detail,[3] so we shall focus here only on those facts pertinent to the claims now before us. On June 13, 1975, New Town entered into a Land Disposition Agreement ("LDA") with the District of Columbia Redevelopment Land Agency, pursuant to which New Town was granted the rights to develop a 360–acre parcel of land in the Fort Lincoln area of Northeast Washington, D.C.[4] The LDA envisioned the creation of a diverse community for some 16,000 residents that would include a Town Center, community and recreation facilities, and mixed-income housing.[5] To that end, the provision of the LDA at issue in this case, Article VII (entitled "Equal Employment Opportunity, Social and Economic Programs"), required New Town to: (1) create and fund a non-profit corporation that would provide services to the Fort Lincoln community and would eventually be controlled by its residents; (2) contribute $250,000 in cash, staff services, or facilities to the Non-Profit Corporation; (3) convey at least 25% of the ownership of a newly created real estate company to the Non–Profit Corporation; and (4) pay the Non–Profit Corporation a fixed percentage of the gross commissions and fees earned by any third-party real estate company under contract to New Town from the sale, rental, leasing or management of property in Fort Lincoln.[6]

Appellants claim that, as part of the Fort Lincoln project, New Town sold 388 condominium units in transactions subject to the District of Columbia Condominium Act.[7] In connection with those transactions, the Condominium Act required New Town to furnish public offering statements disclosing "to prospective purchasers all unusual and material circumstances or features affecting the condominium."[8] It is undisputed that New Town's public offering statements did not disclose the LDA or the obligations imposed in Article VII.

Eventually, the condominium purchasers learned of the LDA and discovered that New Town had not fulfilled its Article VII commitments. On the purchasers' behalf, the Civic Association brought suit against appellees for breach of contract, breach of fiduciary duty, and other common law causes of action predicated on New Town's breach of Article VII, and for disclosure-related violations of the Condominium Act and the District of Columbia Consumer Protection Procedures Act ("CPPA").[9] The trial court dismissed the complaint in its entirety for failure to state a claim. In *Fort Lincoln I*, we affirmed the dismissal of the common law claims but remanded the case for further proceedings with respect to the statutory claims.

We upheld the dismissal of the breach of contract claim on the ground that appellants had no contractual right to enforce the LDA—they were neither parties to it nor its intended beneficiaries,[10] and the

3. 944 A.2d at 1059–62.

4. *Id.* at 1059–60. The Redevelopment Land Agency and its successor organization, the RLA Revitalization Corporation, have since been abolished; their functions and powers have been transferred to the Mayor. *See id.* at 1059 n. 1; *see also* D.C.Code § 2–1225.01(a) (2012 Supp.).

5. *Fort Lincoln I*, 944 A.2d at 1059–60 & n. 2.

6. *Id.* at 1060–61.

7. The only condominium sales relevant to this appeal are those that took place after the effective date of the Condominium Act, March 29, 1977. *See* D.C.Code § 42–1901.01(a).

8. *Id.* § 42–1904.04(a).

9. *See* D.C.Code §§ 28–3904, 3905(k) (2011 Repl.).

10. Rather, we held, appellants were merely "incidental beneficiaries, part of the public and the 16,000 residents of the Fort Lincoln

language of the LDA did not otherwise grant them any legal rights. We upheld the dismissal of appellants' other common law claims because they were not "separate and distinct" claims but merely "impermissible recharacterization[s] of the breach of contract claim."[11] As such, they suffered from the same basic flaw as the contract claim—they presupposed appellants' contractual right to enforce the LDA, a right that did not exist.

However, we did not affirm the dismissal of appellants' Condominium Act claim. We did not view the Condominium Act claim as a mere recharacterization of the breach of contract claim because it had a non-contractual basis—namely, the condominium purchasers' statutory right to be informed of "all unusual and material circumstances or features affecting the condominium."[12] Appellants, we held, were "entitled to present to a jury" their claim that the undisclosed information about the LDA was unusual or material under the Condominium Act.[13] If they could prove that claim, we added, "liability attaches and [appellants then] must prove [their] damages."[14] Although New Town argued that appellants' theory of damages was impermissibly speculative and based not on New Town's failure to *disclose* the LDA but rather its purported *breach* of the LDA, we left those contentions for the trial court to resolve on remand.[15]

## B. Proceedings on Remand

Following the remand, the parties proceeded to trial on appellants' Condominium Act claim. In his opening statement, the Civic Association's counsel referred to the non-disclosure of the LDA to the condominium purchasers and New Town's failure to fulfill its contractual commitments. New Town's counsel objected, arguing that the Civic Association was "attempt[ing] to confuse the [j]ury that some[ ]how this is a breach of contract case." The trial court sustained New Town's objection. It did so again when the first witness was on the stand and the Civic Association's counsel sought to inquire about the LDA. A lengthy bench conference ensued, in which the parties argued the admissibility of evidence concerning New Town's breach of the LDA to prove the condominium purchasers' damages.

Appellants' counsel explained that if New Town had disclosed the LDA to the condominium purchasers in its offering statements, they would have been able to request the District of Columbia government to enforce New Town's obligations under Article VII. The likelihood that the District government would have responded favorably to such a request would be shown, counsel proffered, by evidence that (1) Article VII was added to the LDA at the District's behest, implying the District

community who might realize some benefit from the implementation of the LDA." *Fort Lincoln I*, 944 A.2d at 1067.

11. *Id.* at 1070, 1076 (internal quotation marks omitted).

12. D.C.Code § 42–1904.04(a).

13. *Fort Lincoln I*, 944 A.2d at 1075.

14. *Id.* at 1073; *see also id.* at 1074 ("[W]e conclude that a plaintiff condominium owner or owners' association that files a claim relat-

ing to the public offering statement under § 42–1904.04(a) may allege either mere failure of the developer to disclose in its public offering statement a material and unusual feature affecting the condominium or an intentional or fraudulent failure to disclose in its public offering statement a material or unusual feature affecting the condominium.").

15. *Id.* at 1075 n. 27. As previously noted, we also reversed the dismissal of appellants' CPPA claim. Appellants subsequently withdrew that claim, however, so we have no reason to discuss it further.

had an interest in seeing it effectuated; (2) the condominium purchasers formed a politically astute and effective interest group whose members included lawyers, urban planners, and employees of the Mayor's Office and the City Council; and (3) the Fort Lincoln community had negotiated successfully with the District government for the acceptance of residents' proposals on past occasions. Under this theory, as we understand it, the purchasers' monetary damages were measured by the value to them of the benefits they would have received (and/or the expenses and other losses they would have avoided) had the District required New Town to fulfill its Article VII obligations.

New Town argued that the theory of damages outlined by appellants' counsel was precluded by *Fort Lincoln I* and, alternatively, was too speculative to be submitted to the jury. The trial court agreed with both these objections. It reasoned that appellants were attempting to enforce the LDA by the "back door," contrary to *Fort Lincoln I's* holding that they were only incidental beneficiaries of the LDA with no right to enforce it. Furthermore, the court concluded, the question of whether appellants could have persuaded the District government to enforce the LDA was "wholly and entirely speculative." The jury would have to engage in speculation in order to answer such questions as "Who would [appellants] have lobbied? Who would have been the appropriate body to do something about it? ... Would [appellants] have been successful, and if so, what [would have been accomplished]?"

Accordingly, the court ruled, while the Civic Association might prove that New Town violated the Condominium Act by

not disclosing the LDA in its public offering statements, the Civic Association would not be allowed to present evidence that New Town breached the LDA. This ruling, the court stated, did not "mean that if [appellants] prove their case that the LDA terms were material and unusual and not provided, that there may not be some damage that they're entitled to." But appellants' damages could not be based on New Town's failure to fulfill its obligations under Article VII.

In response, the Civic Association's counsel stated that appellants had no other theory of damages, and the ruling meant further trial proceedings would be futile because damages could not be proved. The court agreed, informed the jury that its "services [would] no longer be needed based on a legal decision that [the trial judge] made," and dismissed the case. This appeal followed.

## II. Jurisdiction

■ Before turning to the merits of appellants' claims, we must address the threshold question of our jurisdiction to hear this appeal. New Town argues that appellants have no right to appeal the dismissal of their Condominium Act claim because they themselves asked for it in lieu of proceeding with the trial following the court's adverse evidentiary rulings. "[T]he general rule is that a party [who] requested or consented to a particular ruling is estopped from appealing that ruling." [16] However, there is an exception to this rule: When a plaintiff seeks a voluntary dismissal in response to a trial court ruling that effectively dismantles the plaintiff's case, "we do not consider the dismissal to be voluntary, and [the plaintiff] is not estopped from pursuing [the] appeal." [17]

---

**16.** *Solers, Inc. v. Doe*, 977 A.2d 941, 949 n. 6 (D.C.2009) (citing *Ganss v. Goldenberg*, 39 App.D.C. 597, 599 (1912) and *Halpern v. Gunn*, 57 A.2d 741, 742 (D.C.1948)).

**17.** *Id.*

The present appeal fits within this exception, for by barring appellants from proving their theory of damages, the trial court effectively prevented appellants from proceeding on their claim.[18] New Town argues that the court did not bar appellants from relying on a different theory of damages and that nominal damages, at least, could have been awarded upon a finding of liability. But nominal damages are tantamount to no damages, and the Civic Association's trial counsel was adamant that the court had precluded the only theory of non-trivial damages on which he was prepared to proceed. "[T]he only theories that I know for damages I cannot present on," counsel informed the court, adding "I know of no other harm."

We are aware of no case suggesting that it must be impossible for a party to alter its litigation strategy in any way before this type of judgment—a judgment of dismissal entered on the plaintiff's acknowledgment that an adverse ruling has, as a practical matter, gutted his case—can qualify as involuntary and adverse so as to be appealable. Rather, if the trial court's ruling "affected the merits of the case or the level of proof required, effectively deciding the case," the ensuing "voluntary" dismissal may be appealed.[19] We thus conclude that the present appeal is properly before us.

## III. Exclusion of Evidence in Support of Appellants' Damages Theory

Appellants claim the trial court erred in precluding their presentation of evidence in support of their theory of damages. Generally speaking, we review a trial court's decision regarding the admission or exclusion of evidence for abuse of discretion,[20] but where the evidentiary ruling is based on the trial court's determination of a question of law, appellate review of that determination is *de novo*.[21] The trial court excluded evidence showing New Town's breach of the LDA and appellants' ability to rectify it for two reasons: First, the court construed our holding in *Fort Lincoln I*—that appellants were not intended beneficiaries of the LDA and could not sue to enforce it—to mean that appellants could not rely on New Town's breach of the LDA to prove their damages. Second, the court concluded that appellants' theory of damages was impermissibly speculative. We disagree with both of those determinations.

18. *Id.* at 947, 949 n. 6 (holding that trial court's denial of plaintiff's motion to enforce a subpoena, which made it impossible for plaintiff to proceed with its case, resulted in a dismissal that was "in substance, a dismissal for failure to prosecute" under Super. Ct. Civ. R. 41(b) and therefore was not considered voluntary); *see also, e.g., Raceway Props., Inc. v. Emprise Corp.,* 613 F.2d 656, 657 (6th Cir. 1980) (holding that trial court's ruling that relevant market for antitrust suit was not the one plaintiffs had claimed, and instead was one on which plaintiffs were unable to proceed with evidence, "in effect dismissed appellants' complaint" and therefore was appealable).

19. *Himler v. Comprehensive Care Corp.,* 790 F.Supp. 114, 116 (E.D.Va.1992), *appeal dismissed* 993 F.2d 1537 (4th Cir.1993) (per curiam) (unpublished table decision); *see also Solers,* 977 A.2d at 949 n. 6 (describing the trial court's denial of the plaintiff's motion to enforce a subpoena as rendering the plaintiff "unable to proceed with *its* case") (emphasis added); *Raceway,* 613 F.2d at 657 (holding that an order had "in effect dismissed" the complaint when plaintiffs argued "they were not prepared to and could not proceed with" the case based on the court's restrictions).

20. *See, e.g., Stone v. Alexander,* 6 A.3d 847, 851 (D.C.2010).

21. *See, e.g., In re K.J.,* 11 A.3d 273, 279 (D.C. 2011).

In *Fort Lincoln I*, we expressly refrained from deciding whether appellants could rely on New Town's breach of the LDA to prove the damages they sustained as a result of New Town's non-disclosure of the LDA in (putative) violation of the Condominium Act.[22] But the *ratio decidendi* of our opinion does not preclude such proof. The issue in *Fort Lincoln I* was whether appellants could maintain any of their causes of action against New Town. We held that their breach of contract claim failed because the contract—the LDA—conferred no legally enforceable rights on appellants. Their other common law claims failed for the same reason, as they were nothing more than "recharacterizations" of the breach of contract claim. But appellants' Condominium Act claim was different. We held that the Condominium Act created a private right of action, separate and distinct from a breach of contract claim, which survived because, unlike appellants' breach of contract and other common law claims, it is not predicated on any legal rights supposedly conferred on appellants by the LDA. Rather, it is based on a legal right conferred on appellants by the Act itself—the right of prospective purchasers to be informed of "unusual and material circumstances or features affecting the condominium." [23]

■■■ If appellants prove that New Town violated their Condominium Act rights by failing to disclose the LDA to them in its offering statements, it is a separate question whether they may introduce evidence of New Town's breach of the LDA simply to prove the existence and extent of their damages. The fact that the LDA confers no legal rights on appellants does not answer that question. In principle, where a plaintiff's interests have been harmed by the defendant's tortious failure to disclose material information, the plaintiff may prove damages proximately caused by the non-disclosure by showing what measures it could have taken to protect its interests had the information been provided.[24] Appellants rely on that principle here. They argue that information about the LDA was material within the meaning of the Condominium Act because, as condominium purchasers, they stood to benefit from New Town's performance of its obligations under Article VII to create and fund a Non–Profit Corporation that would be run by, and provide services to, them and other Fort Lincoln residents.[25] Appellants claim that New Town's failure to disclose the LDA deprived them of those benefits because it prevented them from taking steps to remedy New Town's failure to perform its Article VII duties. Their consequent need to present evidence of New Town's breach of the LDA (along with evidence of the remedial measures they could have pursued) to prove their damages did not render their Condominium Act claim a mere reformulation of their legally flawed breach of contract claim. The source of New Town's legal duty to appellants is still the Condominium Act, not the LDA.[26] The breach of the LDA is

**22.** *Fort Lincoln I*, 944 A.2d at 1075 n. 27.

**23.** D.C.Code § 42–1904.04(a).

**24.** The Condominium Act cause of action that we recognized in *Fort Lincoln I* is akin to the cause of action for tortious non-disclosure. *See id.* at 1073–74. In such cases, if the aggrieved party can prove it would have taken measures to protect itself had it known the information, compensation can be awarded to

reflect the difference between the party's position had it been informed and its actual position. *See, e.g., Feltman v. Sarbov*, 366 A.2d 137, 140 (D.C.1976).

**25.** New Town has not disputed the materiality of the LDA.

**26.** *See Fort Lincoln I*, 944 A.2d at 1070; *see also Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C.2008) (noting that a

simply relevant evidence of a necessary element (damages) of the statutory cause of action; it is not the cause of action itself.[27] Nor is it correct to equate appellants' theory of damages with enforcement of the LDA. Appellants' claim sounds in tort rather than contract; if they succeed in proving that, had the LDA been disclosed to them, they would have convinced the District to enforce it against New Town, they at most will be entitled to monetary damages reflecting the lost value of New Town's performance to them, not to specific performance (assuming they can establish and quantify their proximately caused damages to a reasonable degree of certainty, as we discuss *infra*).[28] In sum,

because appellants' theory of damages would not resurrect their invalid breach of contract claim, or transform their Condominium Act claim into its equivalent, the trial court erred in ruling that the evidence of New Town's breach of the LDA was precluded by our decision in *Fort Lincoln I.*

▅▅▅▅ Additionally, on the record in its present undeveloped state, we consider it premature to conclude that appellants' theory of damages is impermissibly speculative. A plaintiff must "establish both the fact of damages and the amount of damages with reasonable certainty."[29] The proof need not be mathematically precise,

tort claim may be considered independent of a claim for breach of contract if, *inter alia,* the duty upon which the tort is based flows from considerations other than the contractual relationship); *District of Columbia v. Chinn,* 839 A.2d 701, 710 (D.C.2003) (noting that a plaintiff may bring separate claims for assault and negligence if, *inter alia,* he "has pled and established separate and distinct claims").

**27.** There are other contexts in which the breach of a contract is an element in a noncontractual cause of action—for example, tortious interference with a contract or a business relationship. *See Onyeoziri v. Spivok,* 44 A.3d 279, 286 (D.C.2012) (listing the elements of intentional interference with business relations as "(1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages" (internal quotation marks omitted)); *Casco Marina Dev., L.L.C. v. D.C. Redev. Land Agency,* 834 A.2d 77, 83 (D.C.2003) (listing the elements of tortious interference with contract as: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach" (internal quotation marks omitted)).

**28.** Although the trial court found appellants' damages claim to be speculative in other respects, it did not dismiss appellants' ability to

quantify the value to the condominium purchasers of New Town's fulfillment of its obligations under Article VII. That said, we recognize that this may be the subject of future litigation in this case. For example, because "[t]he LDA does not single out any particular civic association, nor condominium owners as intended beneficiaries," and appellants represent only a segment of "the public and the 16,000 residents of the Fort Lincoln community who might [have] realize[d] some benefit from implementation of the LDA," *Fort Lincoln I,* 944 A.2d at 1065, 1067, it is foreseeable that appellants may face difficulties in quantifying their damages as a portion of the total losses shared by the community as a whole, and in proposing a suitable instruction to guide the jury in awarding just damages to them.

**29.** *Hawthorne v. Canavan,* 756 A.2d 397, 401 (D.C.2000) (internal quotation marks omitted); *see also Trs. of the Univ. of D.C. v. Vossoughi,* 963 A.2d 1162, 1174–75 (D.C. 2009) (A plaintiff is "not required to prove the value of his lost property with mathematical precision, but only with a fair degree of probability, or what we have termed reasonable certainty." (internal footnotes and quotation marks omitted)); *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr.,* 957 A.2d 890, 904 (D.C.2008) ("The jury's award will be upheld as long as it is a 'just and reasonable estimate based on relevant data,' even if it is not proven with mathematical precision." (internal quotation marks omitted)).

however; what is required is "some evidence which allows the trier of fact to make a reasoned judgment" rather than an award based on "speculation or guesswork."[30] Our cases acknowledge that "definitive and precise proof of damages is rarely possible and not required"; "[r]ough justice in the ascertainment of damages is often the most that can be achieved, and it is better than nothing."[31] Thus, "[p]robable and inferential considerations as well as direct and positive proof may provide the basis for an award."[32]

Crediting their counsel's proffer at trial, we think appellants may well have been able to shoulder their burden.[33] The aspect of appellant's claim that the trial court deemed unduly speculative was the likelihood that appellants would have succeeded in lobbying the District government to enforce the LDA (had they learned of the LDA in time to take effective action). But absent evidence to the contrary, a jury reasonably could find that District officials more likely than not would have responded favorably to the complaint of a large group of District home owners (many of them voters) that a major real estate developer had breached its contract with the District to their community's detriment. If, as appellants prof-fered, the District (through the Redevelopment Land Agency) was the party that had insisted on Article VII's inclusion in the LDA, it would be all the more reasonable to infer that the District would have been motivated to enforce that Article rather than ignore New Town's breach. And the evidence, also proffered, that the Civic Association had politically savvy and well-connected members who knew how to approach the District, and that the Fort Lincoln community had lobbied the District successfully on other issues of community concern, could have lent additional support to appellants' efforts to persuade the jury that enforcement would have occurred. Finally, the record in its current posture provides no reason to suppose that New Town could have fended off a lawsuit by the District to compel specific performance of the LDA (or for alternative relief of equivalent value to the residents of Fort Lincoln).

We do not wish to minimize the difficulties appellants could have encountered in attempting to prove damages proximately caused by New Town's violation of the Condominium Act with the requisite degree of certainty. But at this stage in the proceeding, it was premature to say as a matter of law that appellants could not do

---

**30.** *NCRIC,* 957 A.2d at 902; *see also Wash. Inv. Partners of Del., LLC v. Sec. House, K.S.C.C.,* 28 A.3d 566, 580 n. 19 (D.C.2011) ("A plaintiff is not required to prove a precise amount; rather, he must establish the fact of damage and a reasonable estimate as to the amount.").

**31.** *Vossoughi,* 963 A.2d at 1177–78; *see also Hawthorne,* 756 A.2d at 401 (" 'The courts quite reasonably have been very liberal in permitting the jury to award damages where the uncertainty as to their extent arises from the nature of the wrong itself, for which the defendant, and not the plaintiff, is responsible.' " (quoting W. Page Keeton *et al., Prosser and Keeton on the Law of Torts,* § 52, at 350 (5th ed.1984) (brackets omitted))).

**32.** *Vossoughi,* 963 A.2d at 1175 (internal quotation marks omitted); *see also Claytor v. Owens–Corning Fiberglas Corp.,* 662 A.2d 1374, 1384 (D.C.1995) (noting, in an asbestos litigation case, that "[a]ppellants may prove their case, specifically the element of causation, by circumstantial evidence, deriving the benefits of all reasonable inferences").

**33.** "Because [appellants'] claim ... was dismissed without an evidentiary hearing, [their] underlying allegations should be credited by analogy to Super. Ct. Civ. R. 12(b)(6)." *Hawthorne,* 756 A.2d at 401 n. 5 (citing *Abdullah v. Roach,* 668 A.2d 801, 804 (D.C.1995)).

so—that a properly instructed jury would be unable to award damages that fairly approximate appellants' losses based on a reasonable estimate of the probability that they would have induced the District government to enforce Article VII of the LDA.[34]

## IV. Conclusion

The trial court erred in concluding that our holding in *Fort Lincoln I* precluded appellants from proceeding with a theory of damages under the Condominium Act that required evidence of New Town's breach of the LDA and in ruling at the beginning of trial that appellants' evidence would be too speculative for the jury to award damages. We therefore reverse the judgment on appeal and remand for further proceedings consistent with this opinion.

*So ordered.*

---

**34.** *Cf. Holmes v. Amerex Rent–A–Car,* 710 A.2d 846, 853 (D.C.1998) ("[I]n an action for negligent or reckless spoliation of evidence, damages arrived at through just and reasonable estimation based on relevant data should be multiplied by the probability that the plaintiff would have won the underlying suit had the spoliated evidence been available").